DERMOTT SPECIAL SCHOOL DISTRICT and Bruce Terry
*v.* Iris JOHNSON

00-596                                              32 S.W.3d 477

Supreme Court of Arkansas
Opinion delivered December 7, 2000

*Gibson Law Office*, by: *C.S. "Chuck" Gibson*, for appellants.

*Gibson & Hashem*, by: *Hani W. Hashem*, for appellee.

RAY THORNTON, Justice. Appellee, Iris Johnson, a teacher in the Dermott Special School District, filed a complaint against appellants, the Dermott Special School District, and Bruce Terry, the superintendent of the school district, on July 31, 1998. In her complaint, appellee alleged various violations of the Arkansas Civil Rights Act. Appellee, who is wheelchair-bound, alleged that appellants refused to make accommodations to enable her to continue her employment and that the accommodations which were made were inadequate and caused appellee to suffer further physical injuries. Appellee sought compensatory and punitive damages for injuries, including pain and suffering, emotional distress, and mental anguish, further alleging that Terry had made derogatory comments about her disability.

On August 21, 1998, in response to appellee's complaint, appellants filed a motion to dismiss. In their motion to dismiss, appellee claimed that they were immune from suit pursuant to the constitutional grant of sovereign immunity. On February 28, 2000, a hearing was held on this motion. On February 29, 2000, the trial court issued an order denying appellants' motion to dismiss based upon its finding that school districts are not entitled to invoke the constitutional prohibition against making the State a defendant in

any of her courts. It is from this order that appellants bring their interlocutory appeal. We affirm the trial court.

■ This case is properly before this court pursuant to Ark. R. App. P. Civ. 2(a)(2). *See also Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998)(holding that an appeal may be taken from an order denying a motion to dismiss based on the movant's assertion that he is immune from suit). In that case, we noted that the rationale justifying an interlocutory appeal is that the right to immunity from suit is effectively lost if the case is permitted to go to trial. *Id.*

■ On appeal, appellants contend that school districts are entitled to the constitutional grant of sovereign immunity and therefore the trial court erred in denying their motion. When a party appeals an adverse ruling on a motion brought under Ark. R. Civ. P. 12, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Newton, supra.*

■ Article 5, Section 20, of the Arkansas Constitution provides that: "The State of Arkansas shall never be made defendant in any of her courts." We have held that this constitutional prohibition is not merely declaratory that the State could not be sued without her consent, but that all suits against the State were expressly forbidden. *Brown v. Arkansas State (HVACR) Lic. Bd.*, 336 Ark. 34, 984 S.W.2d 402 (1999); *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986); *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938).

■ Where the pleadings show that the action is, in effect, one against the State, the trial court acquires no jurisdiction. *Id.* Further, where a suit is brought against an agency of the State with relation to some matter in which the appellee represents the State in action and liability, and the State, though not a party of record, is the real party in interest so that a judgment for the plaintiff would operate to control the action of the State or subject the State to liability, the action is, in effect, one against the State and is prohibited by the constitutional bar. *Id.* We have further held that tapping the State's treasury for payment of damages will render the State a defendant and violate the constitutional principles of sovereign immunity. *Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998);

*Arkansas Dep't of Human Servs. v. State*, 312 Ark. 481, 850 S.W.2d 847 (1993).

■ The broad constitutional grant to the State to be free from being made a defendant in any of her courts must be distinguished from the limited immunity statutorily granted to political subdivisions from damages negligently inflicted on others. Arkansas Code Annotated § 21-9-301 (Repl. 1996) grants political subdivisions this limited statutory immunity. The statute provides:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees

*Id.*[1] It is clear that this statutory grant of immunity is not as comprehensive as the constitutional prohibition established by Article 5, Section 20, of the Arkansas Constitution. Specifically, the immunity granted by statute for tortious conduct is limited to any recovery in excess of insurance coverage. By contrast, the constitutional prohibition against bringing an action against the State is far-reaching and applies to all circumstances where the State's treasury could be tapped for the payment of damages.

■ The question before us for decision is whether a school district is "the State" as that phrase is used in Article 5, Section 20, of the Arkansas Constitution for sovereign-immunity purposes. We have previously noted that a school district and its employees are different from state employees. *Cousins v. L. T. Dennis,*

---

[1] We note that political subdivisions have long enjoyed this type of limited statutory immunity. This limited common law immunity from liability for damages negligently inflicted on others was reversed in *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968). However, within a year the General Assembly adopted Act 165 of 1969, which provided:

> It is hereby declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State shall be immune from liability or damages, and no tort action shall be against any such political subdivision, on account of the acts of their agents and employees.

*Id.*

298 Ark. 310, 767 S.W.2d 296 (1989). We have also held that school districts are political subdivisions of the state and are not state agencies. *Walt Bennett Ford v. Pulaski County Special Sch. Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981). *See also Corbin v. Special Sch. Dist. of Fort Smith*, 250 Ark. 357, 465 S.W.2d 342 (1971). In *Muse v. Prescott Sch. Dist.*, 233 Ark. 789, 349 S.W.2d 329 (1961), we offered a definition of "political subdivisions" and explained why school districts were. political subdivisions. We held:

> [P]olitical subdivisions have been defined as that they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately within their territory for the peculiar benefit of the people there residing.

> It is obvious that the above definition embraces school districts, and in *Christenson v. Felton*, 226 Ark. 985, 295 S.W.2d 361, a school election case, this Court pointed out that a school district is a political township, stating in governmental matters a township is a political subdivision. In fact, as far back as 1870, this Court said: Counties are a political division of the State government, organized as part and parcel of its machinery, like townships, school districts, and kindred subdivisions. Their functions are wholly of a public nature, and their creation a matter of public convenience and governmental necessity, and in order that they may the better subserve the public interest, certain corporate powers are conferred upon them. *See Granger and Wife v. Pulaski County*, 26 Ark. 37.

\* \* \*

> In *Davis v. Phipps*, it is correctly stated that school districts, are not, strictly speaking, a part of the State in the sense that the General Assembly must deal with them. Like levee and drainage improvement districts, counties, cities, and towns, they do not require biennial appropriations, but may function in a quasi independent manner by virtue of continuing statutes or constitutional provisions. This is not true with respect to the State Board of Education, and some other departments of the State.

> It would appear that a school district is in the same legal category as a housing authority. Both are created by the General Assembly, both are termed, and are body corporates, and both may

sue and be sued. In *Fagan Electric Co., Inc. v. Housing Authority, City of Blytheville*, 216 Ark. 932, 228 S.W.2d 39, we held that these public corporations are no more an agency of the State than is any other corporation as to which the State has done nothing except to bring into existence. Similarly, the State's connection with school districts has been limited to the act of bringing such districts into being. The school boards operate the schools in their respective districts, purchase the required property, hold title to the property for the district, and have complete charge of maintenance.

*Muse, supra.*

In *Ozark Unlimited Resources Cooperation, Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998), we addressed the question of whether a school district is entitled to the protection afforded by Article 5, Section 20, of our constitution. The *Ozark* case required us to determine whether an educational service cooperative, providing educational services to various school districts, was immune from suit pursuant to our constitution. In reaching our conclusion that the co-op was not immune from suit, we noted that the co-op, as an entity, is comparable to a school district and held:

> [T]he importance of the co-op's characterization as one type of entity or another cannot be overemphasized because, *unlike school districts, the State Department of Education enjoys sovereign immunity. School districts are considered creatures of the State who may not avail themselves of all constitutional safeguards. See Delta Special Sch. Dist. No. 5 v. State Bd. of Educ.*, 745 F.2d 532 (8th Cir. 1984). As creatures of statute, school districts may only act through a board of directors, and are bound by all lawful contracts into which they may enter. *F.E. Compton & Co. v. Greenwood Sch. Distr. No. 25*, 203 Ark. 935, 159 S.W.2d 721 (1942). A school district is a corporate body with the power to sue and be sued. *Clarke v. School Distr. No. 16*, 84 Ark. 516, 106 S.W. 677 (1907) (decision under prior law).

*Ozark, supra* (emphasis added).

In the case now on review, the trial court denied appellants' motion to dismiss based on its findings that a school district could not avail itself of the constitutional provisions of Article 5, Section 20. We conclude that school districts, as political subdivisions, are not entitled to the State's constitutional sovereign-immunity protection. This determination is supported by our previous case law. Therefore, the trial court did not err in denying appellants'

motion to dismiss. We note that the resolution of this issue does not affect the statutory immunity from tort liability granted by Ark. Code Ann. § 21-9-301. Finally, we note that because the school district is not shielded from suit by constitutional sovereign immunity, appellant Terry, who would derive any protection from suit from the school district, is also not protected by constitutional sovereign immunity. Accordingly, we affirm the trial court.

Affirmed.