The Honorable Kim Hendren State Senator 1501 Highway 72 Southeast Gravette, Arkansas 72736
Dear Senator Hendren:
I am writing in response to your request for my expedited opinion on a series of questions arising from the following factual background:
 The Gravette School District is building a new high school. The Gravette School District and the City of Gravette have reached an agreement whereby the City of Gravette will provide financial assistance with the building of the school by cutting the water and sewer rate it will charge the Gravette School District in half for a set period of time.
Arkansas Code Annotated 14-58-501 allows for cities to provide financial aid to a school district to retire bonds or pay operating expenses. Arkansas Code Annotated 25-20-101, et seq. authorizes local governmental units to cooperate with other localities on a basis of mutual advantage and thereby provide services and facilities in a manner that will best serve the development needs of the community.
These circumstances have prompted you to pose the following questions:
 1. Under the authority of A.C.A. §§ 14-58-501 and/or 25-20-101 et seq.[,] can the City of Gravette reduce in half the fee for water and sewer services it will charge the Gravette School District?
 2. Will reducing the Gravette School District's water and sewer rate violate the City of Gravette's responsibility to the bonds that have been financed specifically for the city water and sewer service system?
 3. Is the reduction of a water and sewer and [sic] rate considered financial aid under Arkansas Code Annotated 14-58-501?
 4. Is an incorporated town a "public agency" under the definition of Arkansas Code Annotated 25-20-103?
RESPONSE
With respect to your first question, unless the city is precluded from doing so by the provisions of the bond indenture, I believe that the city council probably may by resolution cut the school district's sewer rate as a form of financial aid pursuant to A.C.A. § 14-58-501. However, under the statute, any grant of financial aid to a school district may be made only on an annual basis. Accordingly, I believe it would be impermissible for the city to agree to charge the school district a reduced rate for what you term "a set period of time" exceeding one year at a time. Moreover, it is not entirely clear that such indirect financial aid falls within the parameters of the statute. The city's waterworks and sewer commission has exclusive control over the school district's water rate, and I do not believe the commission is statutorily authorized to adjust a water rate in order to provide financial aid to a school district. Accordingly, I believe the commission is obligated to charge the school district the fair market rate for providing water. Although it is inconvenient, I believe the only permissible way to implement a credit against this rate would be for the city council by annual resolution to return to the school district some portion of the amounts collected for water services. I do not believe the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq., which authorizes joint undertakings between or among public agencies, applies to an indirect grant of financial aid of the sort described in your request. I am unable to answer your second question, since I am unauthorized to make a factual determination regarding the city's obligations to bondholders under the bond indenture. The city should consult with its bond counsel regarding whether it might grant a rate credit to the school district without violating its obligations under the indenture. With respect to your third question, I believe a reduction in the sewer rate is in all likelihood a form of financial aid under A.C.A. § 14-58-501. As noted above, I do not believe the waterworks and sewer commission is authorized to reduce the water rate in order to provide financial aid to the school district. However, I believe the city council might by annual resolution reimburse to the school district as a form of financial aid a portion of revenues collected for water services. Although I am uncertain why you are inquiring about the status of an incorporated town, since Gravette is a city of the second class, I believe the answer to your fourth question is "yes."
Question 1: Under the authority of A.C.A. §§ 14-58-501 and/or 25-20-101 etseq.[,] can the City of Gravette reduce in half the fee for water andsewer services it will charge the Gravette School District?
In my opinion, assuming the City of Gravette is not precluded by its contractual obligations under its bond indenture from reducing the fee for water and sewer services it charges the Gravette School District, I believe the city council might make such a reduction pursuant to A.C.A. § 14-58-501 (Repl. 1998) in the sewer portion of the fee but not in the water portion, which is set by the waterworks and sewer commission. I am unaware of any authority that would authorize a waterworks and sewer commission to aid a school district by cutting its water rate. I do not believe the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq.
(Repl. 2002 Supp. 2003) provides an available avenue to effect the reduction you propose in your request.
My inquiries reveal that Gravette is a city of the second class that has established a single waterworks and sewer commission pursuant to A.C.A. § 14-234-116 (Repl. 1998), which provides:
 (a) Any city of the first or second class operating its municipal waterworks through a waterworks commission, by passage of a municipal ordinance, may authorize the waterworks commission to function as a waterworks and sewer commission.
 (b) Waterworks and sewer commissions created pursuant to the authority granted in this section shall retain all powers now granted to waterworks commissions and, in addition, shall have all the powers granted to sewer committees by §§ 14-235-206 and 14-235-207 and all the powers granted to sanitary boards by § 14-235-209.
 (c) It is the express purpose of this section to permit cities of the first and second class to operate their waterworks and sewer systems through a single commission.
With respect to the rate-setting powers of such a commission, one of my predecessors, with whom I concur, offered the following analysis in Ark. Op. Att'y Gen. No. 97-150:
 It is my opinion that a commission established by ordinance does have the authority to increase water rates, but that the authority to increase sewer rates is reserved to the city council.
 Municipalities are given the authority, in A.C.A. § 14-234-116, to create a single commission that carries out the duties of both a water commission and a sewer commission. These single commissions retain all the powers given by law to water commissions and to sewer commissions. Id. The various powers of water commissions, including the power to establish and adjust water rates, are set forth in A.C.A. § 14-234-301 et seq. The various powers of sewer commissions are set forth in A.C.A. § 14-235-201 et seq. Therefore, a single commission that functions as both a water commission and as a sewer commission will be governed by different provisions regarding the establishing and adjusting of water and sewer rates.
 A water commission created pursuant to A.C.A. § 14-234-301 et seq. is given "full and complete charge" of the municipality's water system. See A.C.A. § 14-234-306, which enumerates some of the commission's specific powers and duties. In addition, A.C.A. § 14-234-307 states:
 (a)(1) The commissioners shall, in addition to the powers enumerated in § 14-234-306, have such other and further powers as are now by law given to the city council of any city.
A.C.A. § 14-234-307(a)(1).
 City councils are granted explicit authority, in A.C.A. § 14-234-214, to establish rates for municipal water service. Accordingly, a water commission that is created by the municipality pursuant to A.C.A. § 14-234-302 has the same authority as the city council to establish water rates, by virtue of A.C.A. § 14-234-307, quoted above.
 Sewer committees and sanitary boards that are created pursuant to A.C.A. §§ 14-235-206 -208 are given broad authority to operate, manage and control the sewer systems of the municipalities which created them. See A.C.A. §§ 14-235-207 -209. Nevertheless, the legislature explicitly reserved the authority to establish and adjust rates for sewer service to the city council. More specifically, A.C.A. § 14-235-223 states:
 (a)(1) The council of the municipality shall have power, and it shall be its duty, by ordinance to establish and maintain just and equitable rates or charges for the use of and the service rendered by the works, to be paid by each user of the sewerage system of the municipality.
 (2) The council may change and readjust the rates or charges from time to time to such extent as will not render insecure the rights of the holders of revenue bonds or violate any sinking fund agreement, or other lawful agreement, with such bondholders.
A.C.A. § 14-235-223(a)(1) (2).
See also A.C.A. § 14-235-223(d) (mandating that the sewer rate be established by ordinance of the city council following a public hearing). I fully concur with my predecessor's analysis, which I believe applies to setting or reducing as well as to rate increases.
The fact that the city council controls only sewer rates has significant implications for the application of A.C.A. § 14-58-501, which provides:
 Incorporated towns and cities of the first or second class in the State of Arkansas are empowered and authorized annually to grant financial aid to any public school district in which the town or city is located for the purpose of assisting the school district in retiring school bonds or paying the operating expenses of the district.[1]
Section 14-58-502 (Repl. 1998) qualifies this grant of authority as follows:
 Financial aid granted and paid to public school districts shall be paid out of any funds received by the town or city. However, payments shall not be made from the regular city taxes collected by the county or state for the town or city.[2]
Finally, A.C.A. § 14-58-503 (Repl. 1998), as enacted by Acts 1993, No. 1070, §§ 1, 4 and 5, recites the following terms of assistance:
 (a) The incorporated town or city council granting financial aid shall do so by resolution which shall fix the amount and time of the payments.
 (b) The resolution shall be effective for the period of twelve (12) months.
 (c) The payments shall not exceed the annual revenue from which the funds are paid.
(Emphasis added.) The language I have highlighted in this statute expressly provides that any grant of financial aid pursuant to A.C.A. §14-58-501 must be made by city council resolution, meaning that only the city council can provide financial aid under the statute. Assuming that a rate reduction might indeed qualify as "financial aid" under the statute, it would appear that only the sewer rate might be subject to reduction as a form of aid, since this is the only one of the two rates at issue that the city council is authorized to adjust by resolution. A waterworks and sewer commission, not being authorized to issue a city council resolution, does not appear to be authorized to provide financial assistance to a school district based upon the authority of A.C.A. §14-58-501.[3]
I believe that the legislature granted any city council the authority to award financial aid to a school district within which the municipality is located as a particular application of the general principle that a city council may undertake any action that serves a public purpose within the municipality. See Ark. Op. Att'y Gen. No. 1999-408 (reviewing the types of recipients that might be designated as the recipients of municipal funds under what is known as "the public purpose doctrine" without offending the Arkansas Constitution); see also A.C.A. § 14-55-102
("Municipal corporations shall have power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.").[4]
I strongly doubt that the legislature, in enacting what is now A.C.A. §14-58-501, even envisioned that any entity other than the city council would make such an award of public funds to a school district. I further doubt that the legislature, in enacting the catchall provisions affording a water commission all of the city council's powers regarding water rates, A.C.A. § 14-234-307(a), intended to include among those powers the authority to adjust rates in pursuit of some public purpose, such as subsidizing the construction of a school, that is totally unrelated to the provision of water services.
As noted above, the question remains whether a rate reduction motivated purely by an impulse to assist the school district might indeed amount to "financial aid" under A.C.A. § 14-58-501. In Opinion No. 98-025, one of my predecessors addressed the following question: "May a city fund the operating expenses of a school district from any of [sic] funds other than donations, gifts, or a tax passed for that purpose as provided by A.C.A. § 26-73-114(c)?" In response, my predecessor concluded:
 The above-quoted statutes [A.C.A. §§ 14-58-502 and 26-73-114], when read together, grant cities the broad authority to provide financial aid to pay for a school district's operating expenses from virtually any source of city funds (including the proceeds of sales and use taxes), except the proceeds of "regular city taxes" collected by the county or state for the town or city.
My predecessor noted that the only additional proscription against devoting public funds to aid a school district within which a municipality is located is Ark. Const. art. 16, § 11, which mandates that tax revenues be used for the purpose for which they were levied. My predecessor summed up the applicable principles as follows:
 I therefore conclude that a city may fund the operating expenses of a school district from any funds received by the city, except:
 (1) the proceeds of "regular city taxes" collected by the state or county for the city; and
 (2) the proceeds of taxes that have been designated for a specific purpose other than to aid the school district.
 There appear to be no other limitations on cities' authority to use city funds to pay the operating expenses of school districts.
In addressing the question of whether providing reduced water and sewer rates might be deemed "financial aid" as that term is used in A.C.A. §14-58-501, I am guided by several principles of statutory construction. The first dictates strictly construing the powers the legislature has accorded to municipalities. Municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art.12, § 4. A municipality has no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. Cityof Lowell v. M N Mobile Home Park, Inc., 323 Ark. 332, 336,916 S.W.2d 95, 97 (1996). The Supreme Court restated the restrictions on the scope of activities of municipalities in Burke v. Elmore,341 Ark. 129, 132-33,14 S.W.3d 872 (2000):
 This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. Recently, this court summarized what powers can be exercised by a municipality:
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
However, another principle of statutory construction is likewise pertinent. It is well established that courts should construe legislative language from the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of limiting or extending the meaning. Manning v. State, 330 Ark. 699, 956 S.W.2d 184
(1997). Moreover, the Arkansas Supreme Court has held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of Pine Bluff,284 Ark. 551, 683 S.W.2d 923 (1985).
These principles clearly bear on the question of whether an authorization to grant financial aid implies an authorization to grant a credit against water and sewer rates. In the present case, A.C.A. § 14-58-501 expressly authorizes a municipality to provide "financial aid" to a school district. However, neither A.C.A. § 14-58-501 nor any other authority expressly declares that this "financial aid" might take the form of a credit against fees that the city might otherwise have charged a school district. In my opinion, notwithstanding the Code's silence on this issue, common sense and the natural meaning of language suggest that such a credit, being both "financial" and "aid," would fall within the parameters of A.C.A. § 14-58-501. It appears absurd to suggest that if the city, acting either through the city council alone or, if permissible, through the waterworks and sewer commission, wishes to assist the school district by affording it a credit against water and sewer rates, it can do so only by first collecting revenues at fair-market rates and then returning to the district some portion of those revenues as "financial aid."
However, at least with respect to water rates, the seeming absurdity of the scenario just recited is strongly mitigated by the fact that the city is statutorily barred from setting the rates by virtue of having created the commission, and the commission in all likelihood lacks the authority to charge a reduced rate in pursuit of a purpose unrelated to the financially responsible and efficient provision of water — an unrelated purposes, for instance, such as partially subsidizing the costs of constructing a new high school. Assuming, then, as seems likely, that the decision as to whether to subsidize these costs is exclusively the city council's to make, the city council would appear directly able to provide such a subsidy by way of charging a reduced rate only with respect to the sewer rate that it controls. Should the council decide to provide such a subsidy, I believe it should acknowledge its decision by resolution, as mandated by A.C.A. § 14-48-503. Although the procedure would be inefficient, I believe the only way to realize funds for a further subsidy through the equivalent of a reduced rate for water services would be for the board to include in this resolution a provision declaring that it would return to the school district over the period of the next year a portion of the revenues collected for water services charged at what the commission determines to be the appropriate market rate.
Specifically in response to your question, then, unless the provisions ofthe bond indenture dictate otherwise, I believe the City of Gravette City Council might by resolution reduce the Gravette School District's sewer rates pursuant to A.C.A. § 14-58-501.[5] See response to question 2,infra. I have highlighted the qualifying phrase in my previous sentence to stress that the city by contract may well have foreclosed awarding a grant of financial aid that the Code would otherwise have permitted. Only a finder of fact can determine whether the city's obligations to bondholders would preclude a grant of aid of the sort proposed in your request. The city may wish to consult with its bond counsel regarding this issue.
Moreover, I must stress that even if the city may award the school district a credit against its sewer rate, it may do so only by a city council resolution effective for a period not to exceed one year. A.C.A. § 14-58-503(b). Should the council wish to extend the credit beyond this period, I believe it would need to enact a new resolution.
With respect to the waterworks and sewer commission's control over water rates, I am unaware of any statute that would authorize the commission to reduce a school district's rates in order to provide what amounts to financial aid to the district.
You have further inquired about the possibility of pursuing the proposed arrangement by interlocal agreement pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq. (Repl. 2002 Supp. 2003). In my opinion, the arrangement proposed in your request would not be a "joint or cooperative undertaking" of the sort authorized by the Interlocal Cooperation Act. A.C.A. § 25-20-104. Subsection 25-20-104(a) provides:
 Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law and jointly with any public agency of any other state of the United States which has the same powers, privileges, or authority, but only to the extent that laws of the other state or of the United States permit the joint exercise or enjoyment.
In my opinion, the City of Gravette and the Gravette School District are both "public agencies" as that term is defined at A.C.A. § 25-20-103(1), which includes both school districts and political subdivisions of the state within its definition. However, I do not believe the two public agencies have "the same powers, privileges, or authority under the law" with respect to the arrangement you propose. As discussed above, the proposal described in your request basically amounts to a grant of financial aid by the city to the school district. In my opinion, any such unilateral grant of aid would not qualify as what is described at A.C.A. § 25-20-104(b) as "joint cooperative action" on a project that each public agency would have had the authority to undertake alone.
Question 2: Will reducing the Gravette School District's water and sewerrate violate the City of Gravette's responsibility to the bonds that havebeen financed specifically for the city water and sewer service system?
I am unable to answer this question, since I am neither authorized to make findings of fact nor in a position to do so, given that I have not been provided the bond indenture documents that set forth the city's responsibilities to bondholders. However, I concur with the following general statement of law offered by one of my predecessors in Ark. Op. Att'y Gen. No. 95-328:
 Applicable law requires municipal water and sewer systems with outstanding bonded indebtedness to set and maintain rates sufficient to make specified payments and maintain specified reserves. See A.C.A. §§ 14-234-103(e)(3), 14-234-205(c), 14-234-214(b), and 14-235-223(b). These statutes must be consulted in each case, and applied to the prevailing facts and circumstances, to determine whether a municipality is maintaining its rates for services at levels in violation thereof. The City should also review its ordinances and any other documents relating to its outstanding bonds, including, as applicable, its rate and bond ordinances and any trust indentures, to determine if its rates are at levels in violation of any of the provisions thereof. Such documents commonly contain requirements or covenants to the effect that a municipality will set and maintain its water and sewer rates at levels sufficient to enable it to make certain payments and maintain certain reserves.
(Footnote omitted.)
Question 3: Is the reduction of a water and sewer and [sic] rateconsidered financial aid under Arkansas Code Annotated 14-58-501?
As reflected in my response to your first question, I believe the answer to this question is "yes."
Question 4: Is an incorporated town a "public agency" under thedefinition of Arkansas Code Annotated 25-20-103?
In my opinion, "yes." Subsection 25-20-103(1)(B) of the Code (Supp. 2003) expressly includes within the definition of "public agency" any "[p]olitical subdivision of this state." The Arkansas Supreme Court has adopted the following general definition of the term "political subdivision":
 [P]olitical subdivisions have been defined as that they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately within their territory for the peculiar benefit of the people there residing.
Dermott Special School District v. Johnson, 343 Ark. 90, 95,32 S.W.3d 477 (2000), quoting Muse v. Prescott School Dist., 233 Ark. 789,791, 349 S.W.2d 329
(1961), in turn quoting Arkansas Highway Commission v. Clayton,226 Ark. 712, 715, 292 S.W.2d 77 (1956) in turn quoting Allisonv. Corker, 67 N.J.L. 596, 52 A. 362 (1902). In accordance with this definition, the Code regularly defines the term "political subdivision" as including a town. See, e.g., A.C.A. §§ 12-9-102(3); 12-9-401(7);12-50-103(8); 15-5-103(18); and 21-1-303(4).
Finally, you do not explain how the status of an incorporated town relates to the situation in the City of Gravette. However, I will note for the record that the City of Gravette is not an incorporated town, but rather a city of the second class.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosure
[1] With respect to the meaning of the term "operating expenses" as used in A.C.A. § 14-58-501, I agree with one of my predecessors that the following definition applies:
 The commonly-understood meaning of the phrase "operating expenses" is reflected in the definition of that term that is set forth in Black's Law Dictionary, which states:" Those expenses required to keep the business running, e.g. rent, electricity, heat. Expenses incurred in the course of ordinary activities of an entity." Black's Law Dictionary, 5th Ed.
Ark. Op. Att'y Gen. No. 98-025. In my opinion, this term would clearly encompass the payment of water and sewer rates.
[2] Section 26-73-114 of the Code in turn qualifies the proscription against donating tax revenues to a school district by providing that a city or county may propose on the ballot dedicating a portion of a sales or use tax to a school district.
[3] I recognize that the chapter of the Code applicable to water commissioners contains the following provision granting the commissioners powers coextensive with those the city council might have exercised had it not created the commission:
 (a)(1) The commissioners shall, in addition to the powers enumerated in § 14-234-306, have such other and further powers as are now by law given to the city council of any city.
 (2) The commissioners shall be governed by all existing statutes pertaining to the duties of city councils.
A.C.A. § 14-234-307. Based pm these provisions, it might be argued that a commission could itself resolve to aid a school district by passing a resolution imposing a water rate cut. However, I consider the power to provide financial aid to a school district in the form of a reduced rate logically distinct from the power to manage a water district as efficiently as possible. In my opinion, the legislature has invested a water commission only with the latter power.
[4] The General Assembly may have felt the need to enact such legislation regarding financial aid only to clarify that a city, as a discrete political subdivision acting through its city council, could subsidize the activities of another political subdivision within which the city is located because the subsidy would presumptively serve a public purpose within the city. See A.C.A. § 21-9-301 (acknowledging that both municipal corporations and school districts are "political subdivisions").
[5] In the attached Ark. Op. Att'y Gen. No. 97-227, one of my predecessors concluded that "different classifications for rate purposes are not precluded as a matter of law, so long as they are not arbitrary or unreasonable." My predecessor distinguished the blanket proscription set forth at A.C.A. § 14-42-108(a)(1), which declares it "unlawful for any official or employee of any municipal corporation of this state to receive or accept any water, gas, electric current, or other article or service from the municipal corporation, or any public utility operating therein, without paying for it at the same rate and in the same manner that the general public in the municipal corporation pays therefore. . . ."