The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022-4025
Dear Senator Broadway:
You have requested approval, pursuant to the Interlocal Cooperation Act (A.C.A. § 25-20-101 et seq.), of a proposed interlocal agreement between Dawson Education Co-op (hereinafter "Dawson") and Region VIII Education Service Center (hereinafter "Region VIII"), which the proposed agreement identifies, respectively, as political subdivisions of the State of Arkansas and the State of Texas. You are seeking approval of the agreement pursuant to A.C.A. § 25-20-104(f) (Repl. 2002), which states that "[e]very agreement made under this section prior to and as a condition precedent to its entry into force shall be submitted to the Attorney General, who shall determine whether the agreement is in proper form and compatible with the laws of this state."Id. at subsection (1).
The stated purpose of the agreement, which is captioned "Interlocal Cooperation Agreement" (hereinafter "Agreement"), is as follows:
 The purpose of this Agreement is to provide cooperative purchasing services to [Dawson Education Co-op] through a Program known as the Texas Interlocal Purchasing System (TIPS) Program. The Region VIII Education Service Center, by this Agreement, agrees to provide cooperative purchasing services to the above-named political subdivision. The purposes of the TIPS Program shall be to obtain substantial savings for participating public schools and institutions of higher learning through volume purchasing.
RESPONSE
In my opinion, the Agreement contains all of the requisite formal elements of an interlocal agreement under the Interlocal Cooperation Act. Additionally, assuming, as discussed further herein, that the parties are in compliance with the Arkansas Purchasing Law as it applies to "cooperative purchasing," the Agreement in my opinion is compatible with the laws of this state. Accordingly, subject to this assumption, it is hereby approved.
The Interlocal Cooperation Act provides for cooperative enterprises between or among "public agencies." As an initial matter, I must determine whether both parties to the proposed agreement indeed qualify as "public agencies" — a term the act defines in pertinent part as follows:
 "Public agency" means any . . . "[s]chool district[,] . . . [p]olitical subdivision of this state[,] . . . [and] [p]olitical subdivision of another state. . . ."
A.C.A. §§ 25-20-103(1)(B) and -103(1)(D) (Supp. 2005).
Although the Agreement identifies Dawson and Region VIII as "political subdivisions," I believe it is questionable whether they are properly classified as such for all purposes. As an "education service cooperative," Dawson is an "intermediate service unit" that is constituted under state law "to perform a service function for . . . school districts and other political subdivisions of the state." A.C.A. §§ 6-13-1002 and -1026 (Repl. 1999 and Supp. 2005). This suggests that Dawson may not itself be a "political subdivision," however that term may be defined. Seegenerally Ark. Op. Atty. Gen. 2006-005 (noting the various ways in which the legislature has defined the term "political subdivision.") Nor is it a "school district," although it comprises a "consortia of school districts," id., and is "comparable to a school district." See Ozarks Unltd. ResourcesCoop., Inc. v. Daniels, 333 Ark. 214, 223, 969 S.W.2d 169
(1998). The same can be said, it seems, of Region VIII, which according to my review is not, strictly speaking, either a "school district" or a "political subdivision." A Texas "regional education service center" such as Region VIII is considered to be a political subdivision for purposes of a provision in the Texas Local Government Code governing conflicts of interest (TEX. EDUC. CODE § 8.009(b)). This does not suggest that it is viewed as a political subdivision for all purposes.
One might therefore debate whether Dawson and Region VIII are properly considered "political subdivisions" and whether they fall squarely within the Interlocal Cooperation Act's definition of a "public agency." It is nevertheless my opinion, given the overall purpose of the Interlocal Cooperation Act, that the legislature intended to include public organizations like these within the scope of the act's coverage. The Supreme Court has observed that: "It is axiomatic that the meaning of certain words or phrases cannot be determined in isolation, but must be drawn from the context in which they are used." Bush v. State,338 Ark. 772, 775, 2 S.W.3d 761 (1999). In the present case, this principle leads me to focus on the Act's statement of an intention to benefit "local governmental units." The purpose of the Interlocal Cooperation Act is statutorily defined as being "to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage. . . ." A.C.A. §25-20-102 (Repl. 2002). It seems clr, in my opinion, that Dawson and Region VIII qualify as "local governmental units" of the sort the legislation was designed to serve. Compare Ark. Op. Att'y Gen. Nos. 2006-005, 2002-345, 2001-363, and 2000-187 (applying the Interlocal Cooperation Act to various entities that appear clearly to qualify as units of government).
I therefore conclude that the parties to this "cooperative purchasing" agreement are duly situated to enter into an interlocal agreement. I must next determine whether the proposed agreement involves a "joint or cooperative" undertaking of the sort that requires my approval. A.C.A. § 25-20-104(c) (Repl. 2002). "Interlocal agreements" within the meaning of the Arkansas Interlocal Cooperation Act are agreements between two local governmental units that offer a vehicle for the joint exercise of the same "powers, privileges, or authority" which each agency may exercise independently. Id. at (a) and (b). The question, therefore, is whether the proposed Agreement memorializes such a joint endeavor. I note in this regard that according to the Agreement's statement of purpose, which is recited at the first of this opinion, Region VIII will provide "cooperative purchasing services" to Dawson. Such services will be provided through a program known as "TIPS" (the "Texas Interlocal Purchasing Program"), the objective of which is to provide public schools and other entities with "opportunities for greater efficiency and economy in acquiring goods and services" from "high performance" vendors who have been awarded contracts by TIPS through "competitive price solicitation." Agreement at 1-2. See also
TIPS website — http://www.tips-texas.com.[1] This gives the impression that the Agreement may be more in the nature of a straightforward services contract of the sort the parties might enter into without my approval. See A.C.A. § 25-20-108 ("Any one (1) or more public agencies may contract with any one (1) or more other public agencies to perform any governmental service, activity, or undertaking which each of the public agencies entering into the contract is authorized by law to perform alone. . . ."). See also, e.g., Op. Att'y Gen. 2005-240
(concluding that this office's approval was not required in connection with an agreement between a city and a school district for the provision of law enforcement services).
I am convinced upon further review, however, that the Agreement sufficiently evidences a joint venture or partnership. Although Region VIII, through TIPS, is selecting vendors and performing many other services under the Agreement, Dawson also has certain obligations and functions which suggest its role as an active participant in the "cooperative purchasing" endeavor. It agrees to, inter alia, promote the TIPS program within its service area, host an annual "vendor fair," and prepare and track purchase orders. Additionally, it is represented by one of its employees on the "TIPS Advisory Committee," which the Agreement characterizes as having administrative oversight responsibility. Agreement at 2-3. Although the precise role of this Committee is unclear, I believe it is sufficient for purposes of obtaining my review under the Interlocal Cooperation Act to observe that Dawson is not simply receiving purchasing services, as the literal language of the Agreement suggests, but at least to some extent is sharing responsibility for making the purchasing services available to its member school districts. In my opinion this likely qualifies the arrangement as a joint enterprise, which means that it is subject to my approval pursuant to A.C.A. § 25-20-104(f).
Turning then to the substance of the Agreement, and the question whether it falls within the range of permissible joint enterprises, I first note that the legislature has liberally identified the purpose of the Interlocal Cooperation Act:
 It is the purpose of this chapter to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.
A.C.A. § 25-20-102.
With respect to the range of permissible agreements, the act provides:
 Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law and jointly with any public agency of any other state of the United States which has the same powers, privileges, or authority, but only to the extent that laws of the other state or of the United States permit the joint exercise or enjoyment.
A.C.A. § 25-20-104(a) (emphasis added).
The "powers, privileges, [and] authority" of "education service cooperatives" in Arkansas are centered on their broad charge to assist member school districts in maximizing educational resources and opportunities. This is reflected in the following provision in the Education Service Cooperative Act of 1985 (A.C.A. §§ 6-13-1001—1026 (Repl. 1999 and Supp. 2005)):
 Education service cooperatives established by this subchapter will provide to school districts which choose to use them assistance in:
 (1) Meeting or exceeding accreditation standards and equalizing educational opportunities;
 (2) Using educational resources more effectively through cooperation among school districts. . . .
A.C.A. § 6-13-1002(b) (Repl. 1999).
I believe this broad charge reasonably extends to assisting school districts in procuring necessary commodities so as to generally bring the Agreement within the range of permissible interlocal agreements, assuming that Region VIII has the same authority as Dawson in this respect. It appears that this is the case, based upon the relevant provisions of the Texas Education Code and the Texas Government Code that are cited in the Agreement (TEX. EDUC. CODE § 8.002(a) and TEX. GOV'T CODE §791.001 et seq.).
However, I find it necessary to further examine the strictures of law that could impact upon Dawson's participation in the Agreement. This follows from the requirement that I determine whether the proposed Agreement is "compatible with the laws of this state." A.C.A. § 25-20-104(f)(1). You state in your cover letter requesting my approval of the Agreement that "[t]he purpose of the Agreement is to enable school districts in Arkansas and Texas to combine their purchasing power to effect considerable cost savings in the purchases made by those school districts." Letter from Shane Broadway to Mike Beebe (March 1, 2006) at 1. School districts wishing to participate in the cooperative purchasing program offered by Dawson (through the Agreement) will enter into a separate agreement with Dawson.Id. The districts will thereby be able to purchase products from pre-selected vendors. You state in this regard:
 TAPS[2] permits individual school districts to enter into agreements with TAPS for purchasing, with the Arkansas schools enjoying the purchasing power available when combined with the purchasing power of the schools in Texas. Substantial cost savings are available to the member schools, and TAPS undertakes the bidding process for purchases so as to enable the individual school districts to avoid that time-consuming undertaking.
Id. (emphasis added).
The Agreement therefore apparently anticipates that bidding by school districts will be unnecessary when purchases are made through the program effectuated by the Agreement. This raises the question whether the Agreement accords with Arkansas law in light of A.C.A. § 6-21-304(a)(1) (Supp. 2005), which provides in pertinent part:
 All purchases of commodities by any school district, except those specifically exempted by A.C.A. § 6-21-305, shall be made as follows:
 (A) In each instance in which the estimated purchase price shall equal or exceed ten thousand dollars ($10,000), the commodity shall be procured by soliciting bids, provided that the purchasing official may reject all bids and may purchase the commodity by negotiating a contract. If the purchasing official, after rejecting all bids, determines that the purchase should be made by negotiation, then each responsible bidder who submitted a bid shall be notified of the determination and shall be given a reasonable opportunity to negotiate[.]
In the absence of separate authority for Dawson entering into the cooperative purchasing endeavor under this proposed Agreement, I believe Dawson clearly would be bound by the bidding and related requirements imposed by A.C.A. § 6-21-304. However, because such separate authority appears to exist in this instance, it seems that A.C.A. § 6-21-304 is inapplicable. I am referring to A.C.A. § 19-11-249 (Repl. 1998), which authorizes "cooperative purchasing agreements" as follows:
 Any public procurement unit may either participate in, sponsor, conduct, or administer a cooperative purchasing agreement for the acquisition of any commodities or services with one (1) or more public procurement units or external procurement activities in accordance with an agreement entered into between the participants. Such cooperative purchasing may include, but is not limited to, joint or multiparty contracts between public procurement units and open-ended state public procurement unit contracts which are made available to local public procurement units.
(Emphasis added).
A "[l]ocal public procurement unit" under this statute means,inter alia, "[a]ny county, city, town, state agency, and any other subdivision of the state or public agency thereof[.]" A.C.A. § 19-11-206(3)(A) (Supp. 2005). A school district is a political subdivision of the state. Dermott Special SchoolDistrict v. Johnson, 343 Ark. 90, 96, 32 S.W.3d 477 (2000). As a "public authority" and "local education agenc[y]" that serves as an "administrative agent" for public schools in the district (A.C.A. § 6-13-1026 (Supp. 2006)), Dawson clearly falls within the statute in its capacity as an "agency" of a political subdivision. Accordingly, Dawson may either participate in or sponsor a "cooperative purchasing agreement for the acquisition of any commodities . . . with external procurement activities." The term "external procurement activity" is separately defined as "any buying organization not located in this state which, if located in this state, would qualify as a public procurement unit." A.C.A. § 19-11-206(2)(A). According to my information, the Region VIII-sponsored Texas Interlocal Purchasing System ("TIPS") meets this definition. Arkansas Code Annotated § 19-11-249,supra, therefore offers specific authority for Dawson's participation in or sponsorship of a "cooperative purchasing agreement" of the sort you have submitted, which is entered with an out-of-state public buying organization, and which has as its object the acquisition of commodities.
Having determined that specific authority exists for the proposed Agreement, I note that one might still question whether Dawson must nevertheless comply with A.C.A. § 6-21-304's bidding requirements. I have considered this concern and have determined that it is unwarranted for the reason that A.C.A. § 19-11-249
appears to stand as independent authority for engaging in "cooperative purchasing" as contemplated therein. This provision was enacted in 1979 as part of the original Arkansas Purchasing Law (A.C.A. § 19-11-201 et seq.), and there is no indication that any law other than the Purchasing Law governs with respect to "cooperative purchasing agreements" entered under § 19-11-249. However, I should also note that according to my review, the Purchasing Law's "source selection and contract formation" requirements apply with respect to "cooperative purchasing." This can be inferred from other provisions related to an "external procurement activity" that offer authority for certain activities "independent of the requirements of" the statutes relating to source selection and contract formation. A.C.A. §§ 19-11-250 and -251 (Supp. 2005) (emphasis added). The obvious implication of this language is that the "source selection and contract formation" requirements are otherwise applicable. These requirements are found in A.C.A. §§ 19-11-204 and -228 through -240 (Repl. 1998 and Supp. 2005)), and include "competitive bidding," "competitive sealed bidding," and "competitive sealed proposals." A.C.A. § 19-11-204.
I note in this regard that the parties to the Agreement have agreed to "comply fully with all applicable federal, state, and local statutes . . . in connection with the programs contemplated under [the] Agreement." Agreement at 3. It is my conclusion, as discussed above, that the applicable law is the Arkansas Purchasing Law as it pertains to source selection and contract formation. Compliance with this law is compelled by the following additional qualifier under the Interlocal Cooperation Act:
 (e) No agreement made pursuant to this chapter shall relieve any public agency of any obligation or responsibility imposed upon it by law except that, to the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, performance may be offered in satisfaction of the obligation or responsibility.
A.C.A. § 25-20-104(e).
Not being a finder of fact, I am not situated to determine whether the parties are complying with the relevant provisions of the Arkansas Purchasing Law. Assuming, however, that the Agreement's representations concerning compliance with applicable state law are correct, it is my conclusion that the Agreement is compatible with the laws of this state.
Consideration must be given, finally, to the formal requirements of the Interlocal Cooperation Act (A.C.A. § 25-20-104(c)-(d)). I find that the Agreement meets the requirements in specifying the following items:
(1) The duration of the agreement;
(2) The purposes of the agreement;
 (3) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget for it;
 (4) The methods of accomplishing termination of the agreement and for the disposal of property, if any, upon termination;
(5) Any other necessary and proper matters.
A.C.A. § 25-20-104(c).
Because the Agreement does not establish a separate legal entity to conduct the cooperative undertaking, it must also provide for an administrator or a joint board. A.C.A. § 25-20-104(d)(1). You have stated in this regard that "the designation of administrative duties in the Agreement to be carried out byRegion VIII satisfies the requirement of A.C.A. §25-20-104(d)(1). . . ." Letter at 4 (emphasis added). I assume the referenced duties are those assigned to TIPS under the Agreement's sub-heading: "Obligations of the Parties." Because TIPS is not a party to the Agreement, I further assume that Region VIII, by virtue of its sponsorship of TIPS (see n. 1,supra) bears ultimate responsibility to ensure that these obligations are met. As long as that is the case, the requirement of § 25-20-104(d)(1) appears to have been met.
In conclusion, therefore, I hereby approve the Agreement on the assumption that the parties are in compliance with the applicable provisions of Arkansas law as discussed above.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] TIPS is "sponsored by" Region VIII (see TIPS website), apparently by virtue of a separate agreement as indicated by the Agreement wherein it states under the subparagraph entitled "Authorization" that "Region VIII . . . and [TIPS] have entered into an Agreement to provide cooperative purchasing opportunities to public schools and government entities." Agreement at 4.
[2] Although your use of the acronym "TAPS" (Texas Arkansas Purchasing System) is somewhat confusing, given that it does not appear in the Agreement, I note that you use it to refer to the Agreement, and to an entity created by the Agreement. Letter at 1-2. You have also provided material pertaining to an entity of this name, which indicates that "TAPS" is sponsored by Region VIII, Dawson, and the Arkansas Association of School Boards. Seealso www.TAPS-arkansas.com. I gather from this information that the Agreement proposes to memorialize the current "TAPS program."Id.