Heartsill Ragon III, Esquire Gill Elrod Ragon Owen Sherman, P.A. 425 West Capitol Avenue, Suite 3801 Little Rock, AR 72201
Dear Mr. Ragon:
You have requested approval, pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq., of a document captioned "Interlocal Cooperation Agreement" (the "Agreement"), among five property owners' improvement districts (the "districts") located in the City of Cave Springs, Arkansas. You recite the following background facts:
 These districts have been formed by the City of Cave Springs in order to acquire and construct a decentralized waste water collection, treatment and disposal system that will serve ten subdivisions that are located within the City's boundaries.
 In furtherance of the provisions of Arkansas Code Annotated Section 14-94-107(c)(2), the districts propose to join together in the "acquisition, construction, maintenance, operation and financing" of the proposed system. Repayment of the bonds would be secured by those special taxes that the districts will levy against the property located within the boundaries.
You indicate that the districts, apparently in consultation with you, "thought that it would be appropriate to obtain the approval of the Attorney General prior to the finalization and execution" of the Agreement.
RESPONSE
I should note at the outset that I question the suggestion that my approval would be required for the parties to enter into an agreement of the sort you have submitted with your request. The Agreement is clearly of a kind contemplated in the Municipal Property Owners' Improvement Law (the "Act"), A.C.A. §§ 14-94-101 through-128 (Repl. 1998 Supp. 2005), which the Agreement itself recites *Page 2 
as authorizing the proposed cooperative project. Section 14-94-107(c)(2) of the Arkansas Code expressly authorizes a property owners' improvement district board to:
 Join with any county, municipality, improvement district, or other political subdivision or government agency, local, state, or federal, in the acquisition, construction, maintenance, operation, and financing of any of the improvements authorized by this chapter or as to the performance of any of its functions[.]
(Emphasis added.) Neither this statute nor any other provision of the Act conditions a joint enterprise of the sort just described upon the parties obtaining my approval.
Having offered this opinion, I must note that the Agreement, in addition to reciting the provisions of the Act as authorizing the proposed cooperative project, further contains a section that provides as follows:
 The parties hereto acknowledge and agree that this Agreement is intended to comply with the Interlocal Cooperation Act as set forth in Arkansas Code Annotated Section 25-20-101 et seq. and that a copy of this Agreement shall be or has been submitted to the Arkansas Attorney General for review to determine its compliance with said act.
Agreement at § 7. Again, given the provisions of A.C.A. §14-94-107(c)(2), I do not believe the parties were in any sense obliged to invoke the Interlocal Cooperation Act as authorizing the Agreement. Nevertheless, because the Agreement characterizes itself as an interlocal agreement entered into pursuant to the Interlocal Cooperation Act, I will analyze the document pursuant to the standard applicable under that legislation.
For the reasons set forth below, I hereby declare that the Agreement complies with the provisions of the Interlocal Cooperation Act.
As an initial matter, I must determine whether the parties to the Agreement indeed qualify as "public agencies" — a term the Arkansas Code defines in pertinent part as follows: *Page 3 
 "Public agency" means . . . any political subdivision of this state . . .
A.C.A. § 25-20-103(1) (Supp. 2005). The legislature has defined the term "political subdivision" in various ways, depending on the context of particular legislation. See, e.g., A.C.A. §§ 12-9-102(3) and 12-9-401(7) ("`Political subdivision' means any county, municipality, township, or other specific local unit of general government."); A.C.A. §12-50-103(8) ("`Political subdivision' means a city of any class, a town, or a county."); A.C.A. § 14-77-102(f)(4) ("`Political subdivision means any county, municipality, or school district of the State of Arkansas."); A.C.A. § 15-6-103(8) ("`Political subdivision' means a county, municipality, and any other unit of local government, including a school district and an improvement district, authorized by law to perform governmental functions.") (emphasis added); A.C.A. § 19-7-901(2) ("`Political subdivision' means any agency or unit of this state which is authorized to levy taxes or empowered to cause taxes to be levied."). In two instances, the term has been defined as including only public corporations: A.C.A. § 21-1-303(4) ("`Political subdivision' includes counties, cities, towns, villages, townships, districts, authorities, and other public corporations and entities whether organized and existing under charter or general law."); and A.C.A. § 15-5-103(18) ("`Political subdivision' means a city of the first class, a city of the second class, an incorporated town, a county, or an improvementdistrict, or any agency, board, commission, public corporation, or instrumentality of the above.") (emphasis added). In addition, the Arkansas Supreme Court has adopted the following general definition of the term "political subdivision":
 [P]olitical subdivisions have been defined as that they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately within their territory for the peculiar benefit of the people there residing.
Dermott Special School District v. Johnson, 343 Ark. 90, 95,32 S.W.3d 477 (2000), quoting Muse v. Prescott School Dist., 233 Ark. 789, 791,349 S.W.2d 329 (1961), in turn quoting Arkansas Highway Commission v.Clayton, 226 Ark. 712, *Page 4 
715, 292 S.W.2d 77 (1956) in turn quoting Allison v. Corker,67 N.J.L. 596,52 A. 362 (1902). Based in part upon the highlighted definitions above, one of my predecessors opined as follows:
 In support of your request, you invoked Op. Att'y Gen. 82-140, in which one of my predecessors opined that a volunteer fire department qualified as a "political subdivision" of the state because it constituted an improvement district. As provided in the definitions recited above, improvement districts are indeed "political subdivisions" of the state.
Ark. Op. Att'y Gen. No. 2000-013.
Perhaps the most obvious conclusion that can be gleaned from the foregoing definitions is that the precise meaning of the term "political subdivision" can vary with the context of the legislation in which it appears. However, whatever its meaning may be in other contexts, I concur with my predecessor that improvement districts are indeed "political subdivisions" and hence "public agencies" authorized to enter into an interlocal agreement.
Having concluded that the parties are entities of the sort that might enter into a joint enterprise under the Interlocal Cooperation Act, I must next determine whether the proposed agreement in fact involves a joint undertaking of the sort that requires my approval, as opposed to a straightforward purchase contract of the sort the parties might enter into without my approval. See A.C.A. § 25-20-108. I believe the Agreement, which anticipates cooperation among the districts in the "acquisition, construction, maintenance, operation and financing" of the wastewater collection, treatment and disposal system, clearly contemplates a joint undertaking within the scope of the Interlocal Cooperation Act.
The Interlocal Cooperation Act requires that interlocal agreements for joint or cooperative action specify the following items:
 (1) The duration of the agreement;
 (2) The purposes of the agreement; *Page 5 
 (3) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget for it;
 (4) The methods of accomplishing termination of the agreement and for the disposal of property, if any, upon termination;
 (5) Any other necessary and proper matters.
A.C.A. § 25-20-104(c).
In addition, if the interlocal agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, it must specify the following items:
 (1) The provision for an administrator or a joint board that will be responsible for administering the joint or cooperative undertaking;
 (2) The manner of acquiring, holding, and disposing of real and personal property, if any, used in the joint or cooperative undertaking.
A.C.A. § 25-20-104(d).
In my opinion, the Agreement contains all of these required provisions. I therefore conclude, as I am charged with doing, that the Agreement is "in proper form and compatible with the laws of this state." A.C.A. § 25-20-104(f)(1). *Page 6 
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL
 Attorney General *Page 1