Martha Jane SMITH, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

The SCHOOL DISTRICT OF GREENVILLE COUNTY, Defendant.

Susie Coaxum and Geraldine Archer Major, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Beaufort County School District, Defendant.

Butler Gray, Jr., Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Abbeville County School District, Defendant.

Trudy Brown, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Charleston County School District, Defendant.

David Rice, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Chester County School District, Defendant.

Leona Fields and Pearl Holmes, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Colleton School District, Defendant.

Alberta Kelly, Individually and on behalf of all other similarly situat-

ed individuals, Plaintiff,

v.

Dillon School District One, Defendant.

Melinda Robinson and Jessie Wright, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Florence School District One, Defendant.

Lasonya McFadden, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Florence School District Three, Greenville County, Defendant.

Emma Bradley, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Lee County School District, Defendant.

Sallie Walls, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Horry County Schools, Defendant.

Evelyn Thompson, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

School District Five of Lexington and Richland Counties, Defendant.

Maggie Linen, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Georgetown County School District, Defendant.

David Higgins, Individually and on be-

half of all other similarly situated individuals, Plaintiff,

v.

Richland County School District One, Defendant.

Patricia Reid, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Marlboro County Schools, Defendant.

Dorianne Carter, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Sumter School District 17, Defendant.

Ruby Greene, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

The School District of Fairfield County, Defendant.

Kevin Brown, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Williamsburg County School District, Defendant.

Dorethea Black, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Spartanburg County School District No. 7, Defendant.

Alteal Branch–Richardson, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Richland School District Two, Defendant.

Bonita Smith, Individually and on be-

half of all other similarly situated individuals, Plaintiff,

v.

Aiken County Public Schools, Defendant.

Mary Dickerson and Melonese, Washington, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Berkeley County School District, Defendant.

John Sanders, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Marion School District One, Defendant.

Marvin McLean, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

The School District of Oconee County, Defendant.

Terry Guess, Individually and on behalf of all other similarly situated individuals, Plaintiff,

v.

Orangeburg Consolidated School District Four, Defendant.

Nos. CIV.A.6:03–2015–26, CIV.A.9:03–2016–26, CIV.A.8:03–2017–26, CIV.A.2:03–2018–26, CIV.A.0:03–2019–26, CIV.A.2:03–2020–26, CIV.A.4:03–2021–26, CIV.A.4:03–2022–26, CIV.A.4:03–2023–26, CIV.A.3:03–2024–26, CIV.A.4:03–2025–26, CIV.A.3:03–2026–26, CIV.A.2:03–2027–26, CIV.A.3:03–2028–26, CIV.A.4:03–2029–26, CIV.A.3:03–2031–26, CIV.A.0:03–2032–26, CIV.A.4:03–2033–26, CIV.A.7:03–3689–26, CIV.A.3:03–3690–26, CIV.A.1:03–3691–03, CIV.A.2:03–3692–26, CIV.A.4:03–3693–26, CIV.A.8:03–3694–26, CIV.

A.5:03–3695–26.

United States District Court, D. South Carolina, Greenville Division.

April 14, 2004.

Eugene Clark Covington, Jr., Covington Patrick Hagins Stern and Lewis, Greenville, SC, Louis H. Watson, Jr., Watson and Heidelberg, Jackson, MS, for Martha Jane Smith, Individually and on behalf of all other similarly situated individuals, plaintiff.

Thomas Allen Bright, Greenville, SC, for School District of Greenville County, defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS AND DISMISSING THE ACTIONS FOR LACK OF SUBJECT MATTER JURISDICTION

FLOYD, District Judge.

### I. INTRODUCTION

These cases involve twenty-five putative class action suits alleging violations of the Fair Labor Standards Act ("FLSA"). Plaintiffs are, or at one time were, employees of the named Defendant school districts. Pending before the Court are Defendants' motions to dismiss, filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Having carefully considered the motions, the responses, the replies, the arguments of counsel, the record and the applicable regulations and law, the Court is of the opinion that Defendants' motions shall be granted.[1]

### II. STANDARD OF REVIEW

Plaintiffs bear the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1). *Williams v. United States of America*, 50 F.3d 299, 304 (4th

Cir.1995); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181–82, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)(stating that the party asserting jurisdiction has the burden of proving that jurisdiction). The Court must determine if Plaintiffs have sufficiently alleged a basis for subject matter jurisdiction. The factual allegations of the complaint are taken as true. *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982).

In ruling on a Rule 12(b)(1) motion, the Court may consider exhibits outside the pleadings. *Williams*, 50 F.3d at 304. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). The Court's consideration of materials outside the pleadings, such as affidavits, depositions, or live testimony, does not convert the Rule 12(b)(1) motion into a motion for summary judgment. *Adams*, 697 F.2d at 1219.

On appeal, a district court's dismissal of a case for lack of subject matter jurisdiction is reviewed *de novo*. *Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1034 (4th Cir.1994).

### III. CONTENTIONS OF THE PARTIES

Defendants contend that its' motions to dismiss should be granted on the grounds that sovereign immunity, as reflected in the Eleventh Amendment to the U.S. Constitution, bars Plaintiffs from pursuing their actions. According to Defendants, the school districts are an arm of the state for purposes of the Eleventh Amendment.

Plaintiffs maintain that, to be entitled to assert Eleventh Amendment immunity, Defendants must establish that they are each an arm of the state and not merely a "political subdivision" or a "body politic."

---

**1.** To the extent that every one of the Defendants may not have filed a motion to dismiss, the Court will, *sua sponte,* dismiss the actions for want of subject matter jurisdiction.

Plaintiffs argue that the decisional law, as well as South Carolina statutory provisions, clearly distinguish county school districts from state agencies.

## IV. DISCUSSION

### A. The Eleventh Amendment

■ "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend XI. On its face, the plain language of the Amendment would seem to limit only the Article III diversity jurisdiction of the federal courts. *Seminole Tribe v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Nevertheless, the Supreme Court has long interpreted the Eleventh Amendment to stand not so much for what it says as for the presupposition that it affirms. *Id.* (citation omitted). The presupposition is that a state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state, *Hans v. Louisiana,* 134 U.S. 1, 17, 10 S.Ct. 504, 33 L.Ed. 842 (1890), unless 1) the state consents to the suit in unequivocal terms or 2) unless Congress, operating pursuant to a valid exercise of power, unequivocally declares its intention to revoke the immunity. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

■ There is no dispute that Congress failed to abrogate the state's immunity in the FLSA. Moreover, Defendants in these cases have not consented to a private suit under the FLSA. In fact, the parties agree that the dispositive question is whether school districts in South Carolina are arms of the state for purposes of the Eleventh Amendment. Thus, if the Court answers in the affirmative, then dismissal is appropriate; but, if the Court answers in the negative, then the cases shall go forward.

### B. Two South Carolina district court decisions: Green and Stewart

At least two courts in this district have considered this question before today. Unfortunately, however, the courts reached opposite conclusions, and thus provide little guidance to this Court.

In *Green v. Clarendon School District Three,* 923 F.Supp. 829 (D.S.C.1996), when the court considered whether the defendant school district was an arm of the state, it focused almost exclusively on how maintenance of the suit would not affect the state treasury. As to any other relevant factors, such as whether the suit would jeopardize the integrity of the state's sovereignty or whether the state exerts such control over the defendant school district that it should be considered an arm of the state, the court devoted just one sentence. "Defendants have failed to show that maintenance of this suit against the District will jeopardize the integrity of the state's sovereignty, or that the state possesses such control over the District that it can be considered an 'arm of the state.'" *Id.* at 850. Thus, according to the *Green* court, the defendant school district was not entitled to sovereign immunity.

The *Stewart* court, however, reached a different conclusion. *Stewart v. Laurens County School District No. 55,* 1992 WL 12014673 (D.S.C.1992). Interestingly, in deciding that the defendant school district was indeed an arm of the state for purposes of the Eleventh Amendment, unlike the *Green* court, the *Stewart* court ignored the effect that a judgment would have on the state treasury and focused almost exclusively on the extent to which the state exercises control over the defendant school district.

## C. The Fourth Circuit and the Supreme Court: Gray, Cash, Hess and Federal Maritime

In *Hess,* the Court identified as the primary "concerns . . . that underpin the Eleventh Amendment," that federal court judgments not deplete state treasuries and that the sovereign "dignity" of the states be preserved, *Hess,* 513 U.S. at 51, 115 S.Ct. at 406. The primacy of these concerns, explained the Court, is due to the historical facts that "[a]doption of the Amendment responded most immediately to the States' fears that 'federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin,'" *id.* at 38–39, 115 S.Ct. at 400 (citation omitted), and that "'[t]he Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity,'" *id.* (citation omitted). These two concerns, "the Eleventh Amendment's twin reasons for being," *id.* at 47, 115 S.Ct. at 404, the Court instructed, should dominate the inquiry in cases where it is difficult to discern whether a particular entity is an arm of the state, *id.* ("When indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide.").

*Gray v. Laws,* 51 F.3d 426, 431–32 (4th Cir.1995).

Six years later, in *Cash v. Granville County Board of Education,* 242 F.3d 219, 224 (4th Cir.2001), the Fourth Circuit further explained the bipartite test a court is to employ in determining if a governmental entity is an arm of the state for purposes of the Eleventh Amendment. The first part of the test is to establish whether the state treasury will be affected.

> Because the State treasury factor is the most salient factor in Eleventh Amendment determinations, . . . a finding that the State treasury will not be affected by a judgment against the governmental entity weighs against finding that entity immune. Nonetheless, the entity may still enjoy sovereign immunity if the judgment would adversely affect the dignity of the State as a sovereign and as one of the United States.

*Id.* Stated differently, since there are no "relative weights ascribed to these factors," the Fourth Circuit has held that "a determination that the state treasury will be liable for a particular judgment is largely, if not wholly, dispositive of entitlement to Eleventh Amendment immunity in the single state context." *Gray,* 51 F.3d at 433. "If, on the other hand, the state's treasury will not be affected by a judgment in the action, then the availability of immunity . . . must be determined by resort to the other relevant considerations referenced by the Court." *Id.* at 434.

After *Cash* was decided, however, the Supreme Court decided *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). In that case, the Court made clear that "Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit." *Id.* at 766, 122 S.Ct. 1864.

> While state sovereign immunity serves the important function of shielding state treasuries and thus preserving the States' ability to govern in accordance with the will of their citizens, the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns.

*Id.* at 765 (citations omitted). Thus, in light of *Federal Maritime,* it would appear that the treasury prong as explained in *Cash* has been significantly modified so as

to greatly diminish its importance in any sovereign immunity analysis.[2]

Plaintiffs contend that the state treasury will not be affected by any judgment that might arise from these cases. The Court is unpersuaded. As Defendants have noted, with the extraordinarily complex nature of school finance, the Court is unable to fathom how a money judgment against most of these Defendants would not result in an impact upon state funds. Nevertheless, since there has been no discovery on this issue, the Court is unable to reasonably consider this factor. Thus, for purposes of deciding this motion, the Court assumes that there would be no affect on the state treasury if Plaintiff should be awarded judgment.[3] Such a finding tilts slightly against Defendants' arguments for sovereign immunity.

In considering if the judgment would adversely affect the dignity of the state, the Court must decide if the relationship between the governmental entity and the state is sufficiently close to render the entity an arm of the state. In this analysis, the Court is to weigh such considerations as 1) the extent of control that the state exerts over the entity or the degree of autonomy that the entity enjoys from the state, 2) the range of the entity's concerns, and 3) the manner in which the laws of the state treat the entity. *Cash*, 242 F.3d 219, 224.

### 1) control v. autonomy [4]

A review of South Carolina's system of public education evidences the lack of autonomy enjoyed by the school districts in this state. As a preliminary matter, the Court notes that the South Carolina Constitution, Art. XI, § 3, requires that "[t]he General Assembly shall provide for the maintenance and support of a system of free public schools open to all children of the State and shall establish, organize, and support other public institutions of learning as may be desirable." In addition, the South Carolina Supreme Court has held that the South Carolina Constitution's education clause requires the General Assembly to provide the opportunity for each child to receive a "minimally adequate education." *Abbeville County School District v. State*, 335 S.C. 58, 68, 515 S.E.2d 535, 540 (1999).

In addition to the constitutional mandates placed on the legislature, school districts in South Carolina may not purchase or sell school property without prior approval from state-level administrators. S.C.Code Ann. § 59–23–250(B); S.C.Code Ann. § 59–19–190; 24 S.C.Code Ann.Regs. 43–190; 24 S.C.Code Ann.Regs. 43–191. School districts also must acquire approval from the State Superintendent of Education for all construction plans and specifications before seeking bids for the construction. S.C.Code Ann. § 59–23–210(B);

---

**2.** Assuming that the Court did not agree that *Federal Maritime* diminished the *Cash* treasury factor, however, it would still find that allowing Plaintiffs to proceed with these cases would offend the notion that the state is to be accorded the respect owed to it as a joint sovereign.

**3.** Even if the Court were to find that the state treasury would be affected by a judgment, then such a decision would serve only to fortify its opinion that Defendants are entitled to Eleventh Amendment sovereign immunity.

**4.** Even if it were to be established that several of the statutes and regulations are not applicable to a particular Defendant, the Court's ultimate determination that the relationship between the Defendant school districts and the state is so close as to render the Defendant school districts as arms of the state for purposes of Eleventh Amendment sovereign immunity would not change in light of the overwhelming control mandated by the other statutes and regulations.

S.C.Code Ann.Regs. 43–190; S.C.Code Ann.Regs. 43–191.

Likewise, the South Carolina Department of Education retains control over school transportation in that it is responsible for all operational and maintenance expenses for state-owned buses. S.C.Code Ann. § 59–67–410, *et. seq.* Further, although school districts in South Carolina maintain some fiscal discretion, each district must submit to the State Board of Education annually an audit and other reports regarding the district's budgetary concerns. S.C.Code Ann. § 59–20–60.

Moreover, the Education Accountability Act of 1998 empowers the State Superintendent of Education to assume management of schools that do not meet the mandates of said Act. S.C.Code Ann. § 59–18–1580. Indeed, the Allendale County School District has been operating under the complete fiscal and managerial control of the Department of Education since 1999.

Further evidence of the pervasive control the state has over its school districts was established by the federal No Child Left Behind Act. Legislation regarding charter schools, accountability, and state enforcement mechanisms was adopted to comply with the Act, and thus added to the level of South Carolina's control over its school districts.

Other relevant statutes and regulations that make clear the state's control over Defendant school districts include, but are not limited to, S.C.Code Ann. § 44–29–180 (providing for immunization of school pupils); S.C.Code Ann. § 59–1–150 (definitions); S.C.Code Ann. § 59–1–420 (length of school term); S.C.Code Ann. § 59–1–430 (makeup days); S.C.Code Ann. § 59–1–440 (minimum hours and use of school day); S.C.Code Ann. § 59–24–40 (evaluation of and performance standards for school principals); S.C.Code Ann. § 59–26–10, *et. seq.* (training, certification, and evaluation of public educators); S.C.Code Ann. § 59–29–80 (courses in physical education, ROTC); S.C.Code Ann. § 59–29–100 (supervision of administration of physical education program by State Superintendent of Education); S.C.Code Ann. § 59–39–100 (issuance of uniform diplomas by accredited high school; units required); S.C.Code Ann. § 59–39–105 (superior scholars for today and tomorrow (STAR) diploma); S.C.Code Ann. § 59–39–110 (accelerated program of study); S.C.Code Ann. § 59–39–180 (superior scholars for today and tomorrow (STAR) scholarship); S.C.Code Ann. § 59–39–190 (regulations; list of qualified students; distributions of funds); S.C.Code Ann. § 59–63–20, *et. seq.* (school attendance and safety); S.C.Code Ann. § 59–63–910 (monthly fire drills required; penalty); S.C.Code Ann. § 59–63–920 (certificate of compliance; collection of penalty); S.C.Code Ann. § 59–63–930 (printing and posting of relevant statutes); S.C.Code Ann. § 59–65–10 (responsibility of parent or guardian; notification by school district of availability of kindergarten; transportation for kindergarten pupils); S.C.Code Ann. § 59–65–20 (penalty for failure to enroll or cause child to attend school); S.C.Code Ann. § 59–65–40 (home schooling programs); S.C.Code Ann. § 59–65–45 (alternative home schooling requirements); S.C.Code Ann. § 59–65–47 (associations for home schools); S.C.Code Ann. § 59–65–90 (rules and regulations). *See also* 24 S.C.Code Ann.Regs. 43–50 through 43–64 (teacher certification); 24 S.C.Code Ann.Regs. 43–70 (textbook adoption regulations); 24 S.C.Code Ann.Regs. 43–71 (free textbooks); 24 S.C.Code Ann.Regs. 43–73 (disposition of textbook samples after state adoption process); 24 S.C.Code Ann.Regs. 43–80 (transportation); 24 S.C.Code Ann.Regs. 43–90 (teacher training institutions); 24 S.C.Code Ann.Regs. 43–100 (test security); 24 S.C.Code Ann. Regs. 43–130 (accreditation standards); 24

S.C.Code Ann.Regs. 43–161 (appointment (term) of school superintendent); 24 S.C.Code Ann.Regs. 43–162 (school superintendent compensation and benefits/expenses); 24 S.C.Code Ann.Regs. 43–165.1 (principal evaluation program); 24 S.C.Code Ann.Regs. 43–166 (student and school safety);24 S.C.Code Ann.Regs. 43–172 (accounting and reporting); 24 S.C.Code Ann.Regs. 43–180 (buildings and ground management); 24 S.C.Code Ann. Regs. 43–181 (building and grounds management-fire prevention); 24 S.C.Code Ann.Regs. 43–183 (buildings and grounds-cleaning program); 24 S.C.Code Ann. Regs. 43–187 (building and grounds-heating and lighting); 24 S.C.Code Ann.Regs. 43–201.1 (teacher grants); 24 S.C.Code Ann.Regs. 43–205 (administrative and professional personnel qualifications, duties, and workload); 24 S.C.Code Ann.Regs. 43–205.1 (assisting, developing, and evaluating professional teaching (ADEPT)); 24 S.C.Code Ann.Regs. 43–206 (professional personnel resignation); 24 S.C.Code Ann. Regs. 43–207 (health examination); 24 S.C.Code Ann.Regs. 43–209 (nonprofessional/paraprofessional personnel positions, qualifications, and duties); 24 S.C.Code Ann.Regs. 43–220 (guidelines for state-funded gifted/talented programs); 24 S.C.Code Ann.Regs. 43–225 (school-to-work transition act regulations); 24 S.C.Code Ann.Regs. 43–231 (defined program grades K–5); 24 S.C.Code Ann.Regs. 43–232 (defined program grades 6–8); 24 S.C.Code Ann.Regs. 43–233 (state plan for vocational-technical education); 24 S.C.Code Ann.Regs. 43–234 (defined program grades 9–12); 24 S.C.Code Ann. Regs. 43–236 (career or technology center/comprehensive high schools); 24 S.C.Code Ann.Regs. 43–237 (adult education-curriculum); 24 S.C.Code Ann. Regs. 43–237.1 (adult education program); 24 S.C.Code Ann.Regs. 43–238 (health education); 24 S.C.Code Ann.Regs. 43–240 (summer program); 24 S.C.Code Ann. Regs. 43–241 (homebound instruction); 24 S.C.Code Ann.Regs. 43–242 (driver training); 24 S.C.Code Ann.Regs. 43–243 (special education-education of handicapped children); 24 S.C.Code Ann.Regs. 43–243.1 (special education of students with disabilities); 24 S.C.Code Ann.Regs. 43–243.4 (utilization of generic teacher certification); 24 S.C.Code Ann.Regs. 43–244 (interscholastic activities); 24 S.C.Code Ann.Regs. 43–244.1 (interscholastic activities: academic requirements for participation, grades 9–12); 24 S.C.Code Ann.Regs. 43–246 (instruction at a place other than school); 24 S.C.Code Ann.Regs. 43–258.1 (advanced placement); 24 S.C.Code Ann. Regs. 43–259 (graduation requirements); 24 S.C.Code Ann.Regs. 43–259.5 (superior scholars for today and tomorrow (STAR) diploma/scholarship); 24 S.C.Code Ann. Regs. 43–260 (use and dissemination of test results); 24 S.C.Code Ann.Regs. 43–261 (district and school comprehensive planning); 24 S.C.Code Ann.Regs. 43–262 (testing program); 24 S.C.Code Ann.Regs. 43–262.1 (basic skills assessment program-kindergarten objectives); 24 S.C.Code Ann.Regs. 43–262.2 (basic skills assessment program readiness test); 24 S.C.Code Ann.Regs. 43–262.3 (reading, writing, and mathematics objectives for grades 1–12); 24 S.C.Code Ann.Regs. 43–262.5 (minimum standards for determination of readiness); 24 S.C.Code Ann.Regs. 43–262.6 (basic skills assessment program-writing test: minimum standards); 24 S.C.Code Ann.Regs. 43–264.1 (half-day child development programs); 24 S.C.Code Ann.Regs. 43–267 (early childhood assistance programs-grades K–3); 24 S.C.Code Ann.Regs. 43–268 (academic assistance programs, grades 4–12); 24 S.C.Code Ann. Regs. 43–272 (school admission); 24 S.C.Code Ann.Regs. 43–273 (transfers and withdrawals); 24 S.C.Code Ann.Regs. 43–274 (student attendance); 24 S.C.Code Ann.Regs. 43–279 (minimum standards of

student conduct and disciplinary enforcement procedures to be implemented by local school districts); 24 S.C.Code Ann. Regs. 43–300 (accreditation criteria); 24 S.C.Code Ann.Regs. 43–301 (intervention where quality of education in a local school district is impaired); 24 S.C.Code Ann. Regs. 43–302 (school incentive reward program); 24 S.C.Code Ann.Regs. 43–303 (flexibility through deregulation program); 24 S.C.Code Ann.Regs. 43–500 (operation and funding of teacher training in mathematics, science, reading, and computer education); 24 S.C.Code Ann.Regs. 43–600 (charter schools regulation).

Plaintiffs argue that heavy governmental regulation over the school districts is not indicative of control by the government. The Court disagrees. There are many examples of businesses that are extensively regulated by the government: the drug industry, the medical device industry, the tobacco industry, the railroad industry, the insurance industry and the utility industry, to name a few. However, in these industries, unlike in the instant case, the government does not generally control the hiring and firing of employees, the purchase and acquisition of property, and the construction of buildings. Nor does the government have the power to assume the management of such industries. That is, as a general rule, unlike the industries that the government merely regulates, the State controls those agencies in which it has delegated a portion of its own responsibilities.

The requirements set forth in the above cited, as well as other, statutes and regulations demonstrate South Carolina's pervasive control over school districts. Thus, the first subpart of the state dignity analysis is satisfied.

### 2) range of entities' concerns

The scope of each Defendant school district is more local than statewide. Thus,

although the state constitution and the General Assembly may be the ultimate source of the power exercised by Defendant school districts, it can not be argued that Defendant school districts are not primarily concerned with maintaining and improving the local educational system. Accordingly, although this may weigh slightly against the Court finding sovereign immunity, the Court's finding regarding the other two considerations, as discussed herein, is simply overwhelming.

### 3) State laws' affect on Defendant school districts

The third consideration that the Court must address is the manner in which South Carolina law treats school districts. The South Carolina Supreme Court has held that legislation regarding public education in a particular county does not violate the Home Rule Act because public education is not the duty of the separate counties but of the General Assembly. *Moye v. Caughman*, 265 S.C. 140, 217 S.E.2d 36 (1975). The Home Rule Act, S.C.Code Ann. § 5–7–10, *et seq.* (1976) was enacted

> to bestow upon municipalities the authority to enact regulations for government services deemed necessary and proper for the security, general welfare and convenience of the municipality or for preserving health, peace, order and good government, obviating the requirement for further specific statutory authorization so long as such regulations are not inconsistent with the Constitution and general law of the state.

*Williams v. Town of Hilton Head Island, S.C.*, 429 S.E.2d 802, 805, 311 S.C. 417, 422 (1993). Indeed, contrary to the provisions of the Home Rule Act, the legislature has extensive control over the governance structure of the districts. The legislature determines, among other things, the num-

ber of trustees to sit on a school board, the length of their terms, and date and manner of their elections. *See* S.C. Act No. 568 of 1982. Accordingly, it is the opinion of this Court that South Carolina decisional and statutory law views Defendant school districts as agencies, or arms, of the state, not independent local entities.

## V. CONCLUSION

For the reasons stated above, the Court is of the firm opinion that the relationship between the Defendant school districts and the state is so close and the laws of this state are such as to render the Defendant school districts as arms of the state for purposes of Eleventh Amendment sovereign immunity. That is, to allow these cases to go forward would offend the notion that the state is to be accorded the respect owed to it as a joint sovereign. As such, the Court finds that Defendant school districts are immune from private suits under the FLSA. Accordingly, Defendants' motions to dismiss for lack of subject matter jurisdiction shall be **GRANTED.**

**IT IS SO ORDERED.**