Victoria CRENSHAW, Elmer Boatner, Willia Bean, Mary Agnew, et al., *Petitioners v.* EUDORA SCHOOL DISTRICT, Dermott School District, and Forrest City School District, *Respondents*

04-1291                                                                                   208 S.W.3d 206

Supreme Court of Arkansas
Opinion delivered May 12, 2005

*Dover, Dixon, Horne, PLLC,* by: *Michael R. Johns, Thomas S. Stone,* and *Nona M. Morris,* for petitioners.

*Laser Law Firm,* by: *Dan F. Bufford,* for respondents.

ROBERT L. BROWN, Justice. This case involves a question of law certified to this court by the Federal District Court for the Eastern District of Arkansas in accordance with our Supreme Court Rule 6-8. The certified question arose from four separate, but substantially similar, complaints which were filed by the plaintiffs who

are non-certified employees or former employees of the respondent school districts.[1] The plaintiffs allege in their federal complaints that while in jobs subject to the provisions of the Fair Labor Standards Act of 1938, they failed to receive appropriate overtime compensation. They seek compensatory damages, liquidated damages, prejudgment interest, and attorney's fees. The school districts, which employed at some point the various plaintiffs, contend that they are now arms of the State of Arkansas and are entitled to invoke sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.

After the school districts filed motions to dismiss based on sovereign immunity in each of the four cases pending before the federal district court, that court determined that it was presented with an undecided or uncertain question of Arkansas law. Pursuant to Arkansas Supreme Court Rule 6-8, the federal district court filed certification orders in each case and moved this court to answer its question of law, which it opined may be determinative of all of the plaintiffs' pending causes of action. By *per curiam* order, this court accepted certification. *See Crenshaw v. Eudora Sch. Dist.*, 360 Ark. 87, 199 S.W.3d 679 (2004) (*per curiam*). The question certified is the following:

> Whether in light of *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), and the subsequent action of the legislative and executive branches of government of the State of Arkansas, *Dermott Special Sch. Dist. v. Johnson*, 343 Ark. 90, 32 S.W.3d 477 (2000), accurately states the current legal status of the Arkansas school districts, or whether the *Lake View* decision and subsequent actions of legislative and executive branches of government of the State of Arkansas have changed the legal status of Arkansas public school districts such that Arkansas school districts are now arms of the State of Arkansas that would be entitled to invoke sovereign immunity.

In accordance with our *per curiam* order, the plaintiffs filed their brief and contend that *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002) (*Lake View III*), had no effect on the sovereign immunity of the school districts. They first contend that their causes of action arose prior to this court's

---

[1] The petitioners in this case will be referred to as "the plaintiffs" in accordance with their role in the litigation pending before the federal district court.

decision in *Lake View III*, and, hence, it is inapplicable to their cases.[2] In the alternative, they assert that the school districts' argument regarding *Lake View III* is without merit, and that this court should hold that school districts are not "arms of the state" and are not entitled to sovereign immunity, as this court previously held in *Dermott Special Sch. Dist. v. Johnson*, 343 Ark. 90, 32 S.W.3d 477 (2000). The plaintiffs further assert that neither our *Lake View III* decision, nor the decision in *Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743 (2002), which significantly decreased the "impact on the treasury" factor in determining whether a state entity is entitled to sovereign immunity, altered the simple fact that school districts are political subdivisions in Arkansas and, thus, are unable to claim sovereign immunity. Furthermore, the plaintiffs claim that a review of Arkansas laws makes it clear that school districts have autonomy within their created system and are treated on the same level as counties and cities. The plaintiffs, as a final point, maintain that the federal No Child Left Behind Act does not grant sovereign immunity to school districts.

The school districts respond that the cumulative effect of the myriad regulatory changes and legislative acts following *Lake View III* as well as *Lake View III* itself mandate a finding that the school districts are now entitled to sovereign immunity under the Eleventh Amendment. They submit that this court's decision in *Lake View III* dramatically changed the landscape for Arkansas' system of public education and heightened the level of state control through expanded legislation and regulations over Arkansas' school districts. They contend that significant control did exist prior to *Lake View III* and that that control considered with the post-*Lake View III* recognition of state authority makes it clear that the State of Arkansas now exercises extensive control over its school districts, has limited local control, and has focused on statewide goals and standards of public education. They further contend that any monetary judgment rendered against them would not be paid directly from the state treasury but, instead, would lead to a reduction in state revenue in that any money paid by the school districts from their own maintenance-and-operation funds would ultimately be replenished by funds from the state's treasury. They

---

[2] Pursuant to Ark. Sup. Ct. R. 6-8, this court is limited to addressing only the specific question certified to us by the federal district court.

conclude that the requirements of the federal No Child Left Behind Act are more proof of direct state authority over school districts.

The plaintiffs reply that this court previously defined school districts as "political subdivisions" of the state and not arms of the state, and that *Lake View III* did not affect that status. They urge that while the State is, in fact, trying to fashion an adequate and substantially equal educational system through local school districts, nothing in *Lake View III* or its resulting legislation destroys local school districts and creates a pure state system operated under the auspices of the Department of Education. Instead, they claim that legislation has been enacted and regulations adopted to assist and guide local school districts into compliance; otherwise, the school districts are autonomous. They further emphasize that no award against a school district would be paid from the state treasury. They assert that while the legislation resulting from *Lake View III* allows the State to cast a more watchful eye over the quality of education provided by local school districts, the legislation did nothing to change the fundamental educational structure of this state, which establishes school districts as political subdivisions which operate separately and apart from the state. The plaintiffs conclude that were this court to determine that Arkansas' school districts are now arms of the state, we would join a very small minority of states that have done so.

We turn now to the certified question itself. The crux of the school districts' argument appears to be as follows. While acknowledging this court's previous holding in *Dermott Special Sch. Dist. v. Johnson, supra,* the school districts contend that later decisions from other jurisdictions, as well as the *Lake View III* decision from this court and the resulting legislation and regulations, necessitate a reversal of the *Dermott* case and a finding that Arkansas school districts are now, in effect, state agencies or arms of the state.

In 2000, this court examined and answered the precise question which has now been certified to us for resolution. In *Dermott Special Sch. Dist. v. Johnson, supra,* we considered whether the appellant school district could avail itself of the constitutional grant of sovereign immunity, as provided under Article 5, Section 20, of the Arkansas Constitution. We concluded that the school district could not and held that school districts, "as political

subdivisions, are not entitled to the State's constitutional sovereign-immunity protection." 343 Ark. at 96, 32 S.W.3d at 481. We specifically said:

> It would appear that a school district is in the same legal category as a housing authority. Both are created by the General Assembly, both are termed, and are body corporates, and both may sue and be sued. In *Fagan Electric Co., Inc. v. Housing Authority, City of Blytheville*, 216 Ark. 932, 228 S.W.2d 39, we held that these public corporations are "no more an agency of the State than is any other corporation as to which the State has done nothing except to bring into existence." Similarly, the State's connection with school districts has been limited to the act of bringing such districts into being. The school boards operate the schools in their respective districts, purchase the required property, hold title to the property for the district, and have complete charge of maintenance.

*Id.* at 95–96, 32 S.W.3d at 481 (quoting *Muse v. Prescott Sch. Dist.*, 233 Ark. 789, 793, 349 S.W.2d 329, 331 (1961)).

Most recently, the Eighth Circuit Court of Appeals acknowledged this court's holding in *Dermott Special Sch. Dist. v. Johnson, supra*, to the effect that school districts are not state agencies, but rather are public corporations, which may sue and be sued. *See Herts v. Smith*, 345 F.3d 581 (8th Cir. 2003). In *Herts*, the plaintiff sued the Pulaski County Special School District and its superintendent after he failed to renew her employment contract, allegedly as a result of her testimony at a hearing in a desegregation case against the school district. The defendants denied any violation of Herts's rights and the school district pled sovereign immunity under the Eleventh Amendment. The Eighth Circuit refused to entertain that defense in light of our *Dermott* decision. That court said:

> The defendant Pulaski County Special School District contends that it is a state agency, immune from suit under the Eleventh Amendment, because it is a political subdivision of the State of Arkansas. The District Court rejected this argument, and so do we. The Supreme Court of Arkansas has held that school districts are not state agencies, but public corporations which may sue and be sued. *Dermott Special School District v. Johnson*, 343 Ark. 90, 94-96, 32 S.W.3d 477, 479-80 (2000).

345 F.3d at 588.[3] The *Herts* decision was rendered after this court's decision in *Lake View III*, but that apparently was not a matter of great moment for the Eighth Circuit.

Despite the *Herts* decision, the school districts maintain that there have been two significant cases handed down in recent years which affect the continued validity of our *Dermott* decision. The first case is *Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743 (2002). In *Federal Maritime*, the United States Supreme Court examined whether state sovereign immunity precluded the Federal Maritime Commission (FMC) from adjudicating a private party's complaint against a state-run port where the complaint alleged that the port had violated the Shipping Act of 1984. The Court noted in its decision that the sovereign-immunity doctrine's central purpose is to "accord the States the respect owed them as" joint sovereigns. 535 U.S. at 765 (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993)). For that reason, the Court went on to say that sovereign immunity applies "regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." *Id.*

Thus, the school districts assert that the Court's decision in *Federal Maritime* reduced the importance of the impact on the state's treasury as a factor, since money damages may not be involved. What is left, according to the school districts, is the control factor as the preeminent touchstone for determining whether due respect is being accorded the state as a joint sovereign and whether a local school district is entitled to invoke sovereign immunity. As a result, the school districts conclude that this court should focus on state control as the deciding factor.

The second case cited to this court by the school districts is the South Carolina Federal District Court's decision in *Smith v. School Dist. of Greenville Co.*, 324 F. Supp. 2d 786 (D.S.C. 2004). In *Smith*, there were twenty-five putative class action suits brought which involved alleged violations of the Fair Labor Standards Act.

---

[3] The analysis in *Herts* appears to be vastly simpler than that cited by the school districts. The school districts, in their brief, cite to the Eighth Circuit's use of three factors to be used in determining whether an entity is an arm of the state: (1) the agency's powers and characteristics under state law; (2) the agency's relationship to the state; and (3) whether any award would flow from the state's treasury. *Gorman v. Easley*, 257 F.3d 738 (8th Cir. 2001), *reversed on other grounds by Barnes v. Gorman*, 536 U.S. 181 (2002). Yet, the three-pronged test does not appear to be employed where the state supreme court has already spoken on the issue, as is the case with *Herts v. Smith, supra.*

All the plaintiffs were, or had been, employees of the defendant-school districts. The defendant-school districts moved the court to dismiss the plaintiffs' suits on grounds that the Eleventh Amendment's sovereign immunity barred the plaintiffs from pursuing their actions, as the defendant-school districts were arms of the state for purposes of the Eleventh Amendment. The district court agreed and granted the school districts' motions to dismiss.

In its analysis, the district court first referred to *Federal Maritime Comm'n v. South Carolina State Ports Auth., supra,* and concluded that for purposes of deciding the motion, the court would assume that there would be no effect on the state's treasury if the plaintiffs were awarded judgment, but that that factor was not determinative. It then engaged in a three-factor analysis to decide whether a judgment against the state would adversely affect the dignity of the state as a joint sovereign.

As its first factor, the court considered the extent of state control over the school districts. It noted that the South Carolina Constitution mandated that the legislature provide for the maintenance and support of the schools and that the State's statutory scheme prohibited school districts in the state from purchasing or selling any property without prior approval from state-level administrators. The court observed that the statutory scheme further required approval from the state for all school districts' construction plans and specifications before seeking bids for construction and that the South Carolina Department of Education retained control over school transportation in that it was responsible for all operational and maintenance expenses for state-owned buses. The court further pointed to the school districts' statutorily-required submission to audits by the state board of education and to the State's Accountability Act, which empowered the state superintendent of education to assume management over schools which did not meet the mandates provided for by law. In addition, the court relied on the state's control over school districts required by the federal No Child Left Behind Act. Finally, the court recited a litany of statutes which, in its judgment, evidenced the state control over the defendant-school districts. The court concluded that these statutes and regulations demonstrated South Carolina's "pervasive control over school districts[,]" thereby satisfying the first criterion of the state-dignity test. 324 F. Supp. 2d at 795. It said:

> Plaintiffs argue that heavy government regulation over the school districts is not indicative of control by the government. The

> Court disagrees. There are many examples of businesses that are extensively regulated by the government: the drug industry, the medical device industry, the tobacco industry, the railroad industry, the insurance industry and the utility industry, to name a few. However, in these industries, unlike in the instant case, the government does not generally control the hiring and firing of employees, the purchase and acquisition of property, and the construction of buildings. Nor does the government have the power to assume the management of such industries. That is, as a general rule, unlike the industries that the government merely regulates, the State controls those agencies in which it has delegated a portion of its own responsibilities.

*Id.*

For its second factor, the court considered the range of the school districts' concerns, and concluded that the school districts were primarily concerned with maintaining and improving the local education system. Despite the finding on this factor which the court noted militated against a finding of sovereign immunity, the court observed that the statutory evidence supporting its findings on the other two factors was simply "overwhelming." *Id.*

The court then discussed, as the third factor, the manner in which South Carolina law treats the school districts. Specifically, the court examined whether South Carolina's Home Rule Act was violated by the General Assembly's involvement in the governance of school districts. The court concluded that public education was the duty of the General Assembly and not the local counties. Thus, the Home Rule Act was not violated. In light of the court's conclusion that two of the three factors had been satisfied "overwhelmingly," the court granted the school districts' motions to dismiss.

We begin our analysis by observing that our *Lake View III* decision contains no mention of any change in this court's view of the status of school districts in this state vis-á-vis sovereign immunity. Indeed, this court in large part reiterated in *Lake View III* our prior holding in *DuPree v. Alma School Dist. No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983), that public education was a state responsibility and that deference to local control was not a rational basis for the inequality of education afforded to Arkansas school children. Our case of *Dermott Special Sch. Dist. v. Johnson, supra*, was handed down some seventeen years after *DuPree*; yet we still concluded in the *Dermott* case that school districts were political subdivisions.

Nor was there an allusion in *Lake View III* to an intent to amend this court's prior holding in *Dermott Special Sch. Dist. v. Johnson, supra,* that school districts, as political subdivisions, are not entitled to sovereign-immunity protection.

Under our State's School Districts Code, the statutes generally providing for school districts in Arkansas demonstrate the General Assembly's intent that school districts not be part and parcel of state government. *See* Arkansas Code Annotated §§ 6-13-101, 6-13-102 (Repl. 1999). For example, § 6-13-101 reads:

> (a) There shall be only one (1) kind of school district in this state, and each shall have the same prerogatives, powers, duties, and privileges as herein set forth.

> (b) All school districts which may be hereafter created shall be the same kind with the same prerogatives, powers, duties, and privileges as provided by law.

Ark. Code Ann. § 6-13-101 (Repl. 1999). Section 6-13-102 provides that school districts are body corporates which can sue and be sued:

> (a) Each school district in the state shall be a body corporate, may contract and be contracted with, and may sue and be sued in its corporate name, which shall be the name it now has unless changed by the State Board of Education.

> (b) The state board in naming school districts shall name them, "_____ School District No. _____ of _____ County", giving each district a name and showing the name of the county in which situated, and if it has territory in more than one (1) county, then the name of the county that is the domicile of the district.

> (c) A certificate showing the name and authenticated by the state board shall be filed with the county clerk in the county or of each county in which there is any territory of the district and by him inscribed in a book kept by him for that purpose.

> (d) All school districts shall have the right to acquire and hold real estate and all other classes of property.

Ark. Code Ann. § 6-13-102 (Repl. 1999). We observe that § 6-13-101 has not been amended since 1993, and § 6-13-102 since 1999.

Moreover, the board of directors of each school district has the following powers and performs the following duties:

(1) Have the care and custody of the schoolhouse, grounds, and other property belonging to the district and shall keep it in good repair and in sanitary and sightly condition;

(2) Lease sixteenth section lands located in the school district, individually or in conjunction with the other boards of directors of other school districts interested in the sixteenth section, as the case may be;

(3) Purchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange the sites or schoolhouses;

(4)(A) Employ teachers and other employees necessary for the proper conduct of the public schools of the district and make written contracts with teachers and all other employees in the form prescribed by the State Board of Education.

. . .

(C) The issuing of annual contracts to personnel other than substitute teachers employed on a daily basis and teachers shall be in writing and shall recite the duration of employment, specific duties, and annual salary;

(5) See that all subjects for study prescribed by the state board or by law for all grades of schools in their district are taught;

(6) Visit classrooms frequently, but no less than annually, in the schools in their district while children are present, see to the welfare of the pupils, encourage them in their studies, and assist the teachers in the work so far as they can;

(7) Prepare and publish the district's budget for the ensuing year, in accordance with § 6-13-622;

(8) Issue warrants on the county treasurer, when the county treasurer serves as treasurer of the school district, in accordance with the provisions of this act for the payment of salaries due teachers and other employees and for any other lawful purposes and state in the warrants the consideration for which each is drawn, provided that

the issuance of the warrants for the purposes set out in subdivision (10) of this section shall be governed by the penalty therein set out. The warrant shall be in the form approved by the state board;

(9) Obtain from the county collector and county treasurer information from time to time as to the state of finances of their school district and keep their expenditures safely within the means of the district;

(10)(A) Buy and pay for out of district school funds supplies such as fuel, crayons, charts, globes, dictionaries, etc. which may be necessary for the efficient operation of the schools, provided, no warrants shall be issued by any school board for the payment of the supplies or services set out in this subdivision (10) until the supplies or services shall have been delivered to the school.

. . .

(D) Nothing herein shall prevent any school board from borrowing money from banks, from individuals, or from next year's revenue in order to provide funds in such amount that the maximum nonbonded indebtedness of its school district so incurred shall not be greater than the maximum nonbonded indebtedness of the district was at any time during the preceding fiscal year.

(E) If any nonbonded debt is funded by the issuance of bonds, the amount so funded shall not be considered in determining the maximum amount of nonbonded indebtedness during the preceding fiscal year;

(12) Do all other things necessary and lawful for the conduct of efficient free public schools in the district;

(13) Publish on the district's website if the district has a website:

(A) Minutes of regular and special meetings of the school board;

(B) The budget for the ensuing year;

(C) Financial breakdown of monthly expenses of the district;

(D) Salary schedule for all employees;

(E) The school district's yearly audit; and

(F) The annual statistical report[.]

Ark. Code Ann. § 6-13-620(a) (Supp. 2003).

As the plaintiffs make abundantly clear, a decision of the South Carolina Federal District Court is not precedent for this court nor is it binding. Even so, we disagree that auditing local school districts, requiring an accounting of state revenue expenditures, monitoring school performance, and requiring curriculum enhancements necessarily transforms school districts into a segment of state government. Were that the case, any heavily regulated industry or local government entity subject to state law and regulation would similarly be susceptible to an argument that it is a *de facto* arm of the state. We decline to go so far.

We, furthermore, are of the opinion, and the plaintiffs make this assertion, that Arkansas school districts have more statutory power than what is accorded school districts in South Carolina. Though, admittedly, we have not done an exhaustive study of South Carolina statutes and regulations, it does appear that Arkansas school districts have more power regarding the purchase and maintenance of their property and the hiring and firing of staff. *See, e.g.*, Ark. Code Ann. §§ 6-13-102(d), 6-13-620 (Repl. 1999, Supp. 2003). But even were this not the case, we disagree with the argument posited by the school districts that *Smith v. School Dist. of Greenville Co., supra*, militates in favor of reversing our decision in *Dermott Special Sch. Dist. v. Johnson, supra*.

In short, *Lake View III* and its aftermath did not change the fundamental structure for administering the delivery of public education in this state. We are of the view that *Dermott Special Sch. Dist. v. Johnson, supra*, is still good law and that school districts are merely political subdivisions of this state.

HANNAH, C.J., concurs.

GLAZE, J., not participating.

JIM HANNAH, Chief Justice, concurring. I concur, but only to the extent that this court holds that *Dermott Special School District v. Johnson*, 343 Ark. 90, 32 S.W. 3d 477 (2000), states the current law. The issue presented to this court by certification from the federal district court is not ripe for decision and involves a number of

questions of fact that have not been decided. Amendment 80, § 2(D)(3), does provide this court with original jurisdiction to answer questions of state law certified by a court of the United States. Original jurisdiction means the power to entertain a matter in the first instance. *Matter of T.L.G.*, 214 Mont. 164, 692 P.2d 1227 (Mont. 1984).

The question certified to this court is in essence whether this court's decision in *Lake View School District No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W. 3d 472 (2002) (*Lake View III*), and recent actions of the legislative and executive branches have altered the status of Arkansas school districts with respect to sovereign immunity and the Eleventh Amendment. There is currently pending before this court a petition to reinvest jurisdiction in this court to examine whether the legislative and executive branches have set up a constitutional system of public schools through decisions made and legislative acts passed since our decision in *Lake View III*. A number of acts were passed by the General Assembly in the 2005 legislative sessions, and we have no idea of what if any changes these acts may make in the status of school districts, either explicitly or covertly. The statement in the *per curiam* that "*Lake View III* and its aftermath did not change the fundamental structure for administering the delivery of public education in this State," is sweeping. We must be careful about passing judgment on the impact of legislation that has not been implemented. Further, we cannot pass judgment when we are relying on precedent that may soon change if the mandate is recalled.

In order to carry out our duty under Ark. Sup. Ct. R. 6-8 in any meaningful way, the facts must be undisputed. We do not have undisputed facts in this case.

I also must express my concern that we are making a very broad decision. We may regret the blunt sweeping language of this opinion declaring that public school districts may never be an arm of the State when different facts might one day be presented that show a school district is acting as an arm of the State, and on that basis should be entitled to the State's sovereign immunity. The answer that should be provided to the federal district court is that *Dermott, supra,* remains the current law.