**ELDECO, INC., Plaintiff,**

v.

**SKANSKA USA BUILDING, INC., f/k/a Beers Skanska, Inc., American Home Assurance Company, Federal Insurance Company, Defendants,**

and

**Skanska USA Building, Inc., f/k/a Beers Skanska, Inc., Third–Party Plaintiff,**

v.

**Charleston County School District, Third–Party Defendant.**

C.A. No. 2:05–cv–2329–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

March 23, 2006.

Frank M. Cisa, Cisa and Dodds LLP, Mt. Pleasant, SC, for Plaintiff.

Ryan Earhart, Christopher J, Blake, Nelson Mullins Riley and Scarborough, Raleigh, NC, Hugh Willcox Buyck, Buyck Law Firm, Charleston, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on Third–Party Defendant Charleston County School District's Motion to Dismiss pursuant to Rule 12(b)(1).

## BACKGROUND

This is an action by Plaintiff Eldeco, Inc. ("Eldeco") alleging breach of subcontract against Skanska and claims under payment and performance bonds against Federal and American Home Assurance Company ("AHA"), all related to the construction of the new Wando High School ("the Project"). Skanska was the general contractor for the construction of the Project, and Federal and AHA were Skanska's sureties on the Project. Charleston County School District ("CCSD") is the owner of the new Wando High School. Eldeco filed this lawsuit on July 6, 2005 in the Circuit Court for Charleston County, naming Skanska, Federal, and AHA as defendants. The case was removed to this court on August 12, 2005, and Defendants were granted leave to add CCSD as a Third Party Defendant on the basis that, to the extent that Eldeco is entitled to any recovery, CCSD owes indemnity for any recovery pursuant to CCSD's contract with Skanska.

CCSD now moves that the complaint against it be dismissed as the court has no jurisdiction over it. CCSD claims that it is an arm of the State of South Carolina and thus is immune from suit in federal court under the Eleventh Amendment.

## ANALYSIS

### Standard of Review

 When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995); *Richmond, Fredericksburg & Potomac R. Co. v. U.S.,* 945 F.2d 765, 768 (4th Cir.1991).

### The Eleventh Amendment

 An unconsenting state is immune from suit brought in federal court by her own citizens as well as those of another state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Even when the state is not a named party to the suit, the Eleventh Amendment bars the action if it is "in essence one for the recovery of money from the state" or would "adversely affect the dignity of the state as a sovereign." *Edelman,* at 663, 94 S.Ct. at 1356; *Cash v. Granville County Board of Education,* 242 F.3d 219, 224 (4th Cir.2001). The Eleventh Amendment does not bar suits against local government entities or local government officials sued in their official capacity. *Gray v. Laws,* 51 F.3d 426, 431 (4th Cir.1995).

 In determining whether a government entity with both state and local characteristics constitutes an "arm of the state" for Eleventh Amendment purposes, the court must look to whether maintenance of the suit will (1) deplete the state treasury or (2) otherwise threaten the state's sovereign "dignity." *Gray,* 51 F.3d at 431, *citing Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 51, 115 S.Ct. 394, 406, 130 L.Ed.2d 245 (1994). In *Cash v. Granville County Board of Education,* 242 F.3d at 224, the Fourth Circuit further explained this bipartite test. The first part of the test is to establish whether the state treasury will be affected.

> Because the State treasury factor is the most salient factor in Eleventh Amendment determinations, a finding that the State treasury will not be affected by a judgment against the governmental entity weighs against finding that entity immune. Nonetheless, the entity may still enjoy sovereign immunity if the judgment would adversely affect the *dignity* of the State as a sovereign and as one of the United States.

*Id.* Stated differently, since there are no "relative weights ascribed to these factors," the Fourth Circuit has held that "a determination that the state treasury will be liable for a particular judgment is largely, if not wholly, dispositive of entitlement to Eleventh Amendment immunity in the single state context." *Gray,* 51 F.3d at 433. "If, on the other hand, the state's treasury will not be affected by a judgment in the action, then the availability of immunity ... must be determined by resort to the other relevant considerations referenced by the Court." *Id.* at 434.

 After *Cash* was decided, the Supreme Court decided *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). In that case, the Court made clear that "[s]overeign immunity does not *merely* constitute a defense to monetary liability or even to all types of liability. Rather, it provides

an immunity from suit." *Id.* at 766, 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (emphasis added); *see also Regents of the University of California v. Doe,* 519 U.S. 425, 431, 117 S.Ct. 900, 904–905, 137 L.Ed.2d 55 (1997) ("[W]e reject respondent's principal contention—that the Eleventh Amendment does not apply to this litigation because any award of damages would be paid by the Department of Energy, and therefore have no impact upon the treasury of the State of California. The Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party."). Accordingly, even if a judgment will not affect the treasury of the State, the court must decide if the relationship between the entity and the State is sufficiently close to render the entity an arm of the state. In this analysis, the court is to weigh such considerations as (1) the extent of control that the state exerts over the entity or the degree of autonomy that the entity enjoys from the state, (2) the range of the entity's concerns, and (3) the manner in which the laws of the state treat the entity. *Cash,* 242 F.3d at 224. The Fourth Circuit recognized that these factors require an individualized inquiry into each state's legislative authority to control the entity in question.

### School Districts as Arms of the State

Most courts to address the issue of whether a school district is a state entity have found that it is not.[1] However, this District has had varying opinions on whether South Carolina school districts are arms of the State.[2] In the most recent case from this District, following a reasoned and thorough analysis of the above-listed factors, Judge Floyd held in *Smith v. School District of Greenville County,* 324 F.Supp.2d 786 (D.S.C.2004), that South Carolina county school districts are arms of the state for the purposes of Eleventh Amendment sovereign immunity. He found that, although the defendant school districts could not show that the State treasury would be affected by a judgment against them, the State sufficiently controlled a broad range of school districts' management such that these districts could properly be considered a part of the State. As to the first of the above listed factors, the *Smith* court noted that the South Carolina Constitution mandated that the legislature provide for the maintenance and support of the schools and that the State's statutory scheme prohibited school districts in the state from purchasing or selling any property without prior approval from state-level administrators. The court observed that the statutory scheme further required approval from the state for all school districts' construction plans and specifications before seeking bids for construction and that the South Carolina Department of Education retained control

---

**1.** *See, e.g., Missouri v. Jenkins,* 495 U.S. 33, 56, 110 S.Ct. 1651, 1665, 109 L.Ed.2d 31 (1990) (the Eleventh Amendment "does not afford local school boards like KCMSD immunity from suit"); *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977) (record shows local school board is more like a county or city than it is like an arm of the state, so it is not entitled to Eleventh Amendment immunity); *Cash v. Granville County Bd. Of Educ.,* 242 F.3d 219 (4th Cir.2001) (North Carolina County Boards of Education appears more akin to a county in North Carolina than to an arm of the State).

**2.** *Compare Green v. Clarendon County School Dist. Three,* 923 F.Supp. 829, 850 (D.S.C. 1996) (maintenance of a suit against the District will not jeopardize the integrity of the state's sovereignty, nor will a judgment affect the state treasury) *with Stewart v. Laurens County School District No. 55,* 1992 WL 12014673 (D.S.C.1992) (State exercises sufficient control over defendant school district such that it is an arm of the state).

over school transportation in that it was responsible for all operational and maintenance expenses for state-owned buses. The court further pointed to the school districts' statutorily-required submission to audits by the state board of education and to the State's Accountability Act, which empowered the state superintendent of education to assume management over schools which did not meet the mandates provided for by law. In addition, the court relied on the state's control over school districts required by the federal No Child Left Behind Act. Finally, the court recited a litany of statutes which, in its judgment, evidenced the state control over the defendant-school districts. The court concluded that these statutes and regulations demonstrated South Carolina's "pervasive control over school districts[,]" thereby satisfying the first criterion of the state-dignity test. 324 F.Supp.2d at 795. It said:

> Plaintiffs argue that heavy government regulation over the school districts is not indicative of control by the government. The Court disagrees. There are many examples of businesses that are extensively regulated by the government: the drug industry, the medical device industry, the tobacco industry, the railroad

industry, the insurance industry and the utility industry, to name a few. However, in these industries, unlike in the instant case, the government does not generally control the hiring and firing of employees, the purchase and acquisition of property, and the construction of buildings. Nor does the government have the power to assume the management of such industries. That is, as a general rule, unlike the industries that the government merely regulates, the State controls those agencies in which it has delegated a portion of its own responsibilities.

*Id.*[3]

For its second factor, the court considered the range of the school districts' concerns, and concluded that the school districts were primarily concerned with maintaining and improving the local education system. Despite the finding on this factor which the court noted militated against a finding of sovereign immunity, the court observed that the statutory evidence supporting its findings on the other two factors was "overwhelming." *Id.*

The court then discussed, as the third factor, the manner in which South Carolina

**3.** In *Crenshaw v. Eudora School Dist.*, 362 Ark. 288, —— S.W.3d —— (2005), the Supreme Court of Arkansas was given a certified question from the federal district court to determine whether an Arkansas school district qualifies as an "arm of the state." The court, finding that the state treasury would not be affected by a judgment against a school district, then applied the *Smith* court's three-factor analysis to determine whether the relationship between Arkansas and the school districts are sufficiently close. On the first factor, the *Crenshaw* court found that, under the Arkansas School District Code, the statutes generally providing for school districts "demonstrate the General Assembly's intent that school districts not be part and parcel of state government." *Id.* Further, the court found that "Arkansas school districts have more [autonomous] power regarding the purchase and

maintenance of their property and the hiring and firing of staff" than what is accorded school districts in South Carolina. Even so, the *Crenshaw* court states in dicta that it "disagree[d] [with the *Smith* decision] that auditing local school districts, requiring an accounting of state revenue expenditures, monitoring school performance, and requiring curriculum enhancements necessarily transforms school districts into a segment of state government. Were that the case, any heavily regulated industry or local government entity subject to state law and regulation would similarly be susceptible to an argument that it is a *de facto* arm of the state." *Id.* The court disagrees with this dicta. Judge Floyd clearly and persuasively distinguishes between South Carolina's regulation of certain businesses and the higher level of control it exerts over school districts.

law treats the school districts. Specifically, the court examined whether South Carolina's Home Rule Act was violated by the General Assembly's involvement in the governance of school districts. The court concluded that public education was the duty of the General Assembly and not the local counties. Thus, the Home Rule Act was not violated. In light of the court's conclusion that two of the three factors had been satisfied "overwhelmingly," the court granted the school districts' motions to dismiss.

Skanska urges the court to not follow the holding in *Smith* and instead to rely upon an older case, *Green v. Clarendon County School District Three,* 923 F.Supp. 829 (D.S.C.1996), which held that a South Carolina school district was not an arm of the state. *Green* is an excellent, well-reasoned opinion; however, it was decided in 1996, prior to the Supreme Court's rulings in *Federal Maritime Commission* (2002). Accordingly, the *Green* court's ruling relies almost exclusively on the determination that the State of South Carolina would not be financially affected by a judgment against the school district. However, as this later Supreme Court case makes clear, the fact that the State will not be financially impacted is not determinative, but is only the first step of a two-pronged analysis. The Supreme Court held that "[w]hile state sovereign immunity serves the important function of shielding state treasuries and thus preserving the States' ability to govern in accordance with the will of their citizens, the doctrine's *central purpose* is to accord the States the respect owed them as joint sovereigns." *Federal Maritime Commission,* 535 U.S. at 766, 122 S.Ct. 1864, 152 L.Ed.2d 962 (emphasis added). Accordingly, the second prong of the analysis—regarding affronts to a state's dignity—is now recognized to be as important as the first. Because the analysis in *Green* does not give appropriate consideration to this prong, and does not address the three factors described by the Fourth Circuit in *Cash,* the court finds that it is not as persuasive as the more recent case, *Smith.*

Skanska protests that CCSD makes no showing that *Smith* was correctly decided; however, because the burden of proving jurisdiction lies with the plaintiff, Skanska bears the burden of showing that *Smith* was wrongly decided. Rather than pointing to specific errors in *Smith's* holding, Skanska contends that a "myriad of cases ... have rejected the idea that a county school board is immune from suit" and *Smith* "presents no persuasive basis to depart from this consensus of authorities." Skanska also argues that "CCSD makes no showing that South Carolina's educational system is somehow uniquely distinct from those addressed" by other courts. (Opposition at 6–7.) These arguments against *Smith* are not persuasive. Another court's conclusion, gleaned from an individualized analysis of that specific state's level of control over its school districts, is not relevant to whether the proper analysis was performed in this case.[4] As such, Skanska has failed to present persuasive reasons to overturn the holding in *Smith.*

---

4. The court finds that Judge Floyd need not have performed an exhaustive comparative analysis of other states' statutes and regulations in order to have made an appropriate determination in this case. Nonetheless, the court notes that the Arkansas Supreme Court in *Crenshaw v. Eudora School Dist.,* 362 Ark. 288, —— S.W.3d ——, held that South Car-

olina *does* regulate and manage their school districts more closely than does Arkansas. This finding supports the conclusion that, although North Carolina, Arkansas, and Missouri do not exercise sufficient control over their school districts to make them arms of the state, South Carolina does.

The court therefore finds that it is compelled to follow *Smith's* holding that the relationship between the South Carolina school districts and the State is "so close and the laws of this state are such as to render the Defendant school districts as arms of the state for purposes of Eleventh Amendment sovereign immunity." Judge Floyd applies the proper analysis and gives proper consideration to the concerns underlying the application of the Eleventh Amendment. As such, the court finds that Charleston County School District, as arm of the State of South Carolina, is immune from private suit. Accordingly, Third–Party Defendant's Motion to Dismiss the Complaint against it for lack of subject matter jurisdiction shall be **GRANTED.**

**AND IT IS SO ORDERED.**